290 N.W.2d 675 (1980)
In the Interest of S. W., a minor.
Paul RONNINGEN, Petitioner and Appellee,
v.
C. W., Father, E. W., Stepmother, Respondents and Appellants.
Civ. No. 9691.
Supreme Court of North Dakota.
March 20, 1980.
Rehearing Denied April 21, 1980.
David L. Peterson, of Wheeler, Wolf, Wefald & Peterson, Bismarck, for minor child.
John M. Olson, State's Atty., Bismarck, for petitioner and appellee.
Chapman & Chapman, Bismarck, for respondents and appellants; argued by Daniel J. Chapman, Bismarck.
SAND, Justice.
The father and stepmother of S. W. [Susan, a pseudonym], a minor child, appealed from an order of the Burleigh County juvenile court which declared Susan a deprived child and awarded custody of Susan to the Burleigh County social services until her eighteenth birthday. We affirm.
Susan was born on 16 May 1963 and was living with her father and stepmother in *676 Bismarck, North Dakota, at the time the events which precipitated this case took place. On 16 May 1978, her father found several cigarette butts and some marijuana paraphernalia in an ashtray beneath Susan's bed. He confronted Susan with the discovery, and she denied ownership. The father then kicked Susan and struck her on the head and repeatedly about her legs and backside with a leather belt. The beating left a number of bruises and welts on Susan's backside.
Later that evening, Susan phoned the Bismarck police department to report the beating and request placement in a foster home. The police department turned the matter over to the Burleigh County social services board and a social worker was assigned to investigate the case. Following the investigation, which revealed several other incidents of extreme physical punishment by her father, the social worker petitioned the juvenile court to adjudge Susan a deprived child without proper parental care and control necessary for her physical, mental, or emotional health.
A juvenile court referee heard the petition on 6 July 1978 and found from the testimony received that Susan sustained multiple bruises as the direct result of being struck by her father on 16 May 1978, that Susan was in fear of future physical abuse by her father, and that such future physical abuse was likely to reoccur. The referee concluded that Susan was a deprived child within the provisions of the Uniform Juvenile Court Act, Chapter 27-20, North Dakota Century Code, and recommended that she be placed under the care, custody, and control of the Burleigh County social services board for placement in a suitable foster home until 6 January 1979. "An appeal was taken from that Order and, as the result of some misunderstanding, the appeal was dismissed." Thereafter the Burleigh County juvenile court affirmed the referee's findings in all respects.
Pursuant to the court order, the Burleigh County social services board placed Susan in the home of her sister, D. E. [Debbie, a pseudonym], in Memphis, Tennessee. Susan remained with her sister in Memphis throughout the six-month period in which the juvenile court's order was in effect, and was still living with Debbie on 13 June 1979, when her social worker again petitioned the Burleigh County juvenile court to adjudge Susan a deprived child. There was no explanation offered by either party in this case for the five-month time lapse between the expiration of the first juvenile court order and the filing of the 13 June 1979 petition.
A hearing on the petition was held on 2 and 3 July 1979 before the Burleigh County juvenile court. The evidence introduced at the hearing was the same as that which was presented at the first deprivation hearing on 6 July 1978. The testimony again unveiled the 16 May 1978 beating by her father and disclosed additional instances of harsh physical reprimand by him. Also received into evidence were statements by two Burleigh County social workers of Susan's living conditions and personal progress in the home of Debbie in Memphis. These statements relied to a large extent upon reports received from authorities in Tennessee, but were entered into evidence without objection. The testimony indicated that Susan progressed "tremendously" while living in the home of her sister, and that she was doing quite well in school and was taking summer classes so that she would be able to graduate with her classmates. The social workers further reported that Susan was working parttime in Memphis and had greatly improved her self-image through her sound and close relationship with Debbie. Finally, there was evidence presented at the hearing that no reasonable attempt had been made by any of the parties in this case to reconcile their differences or to communicate with one another during the eleven months in which Susan was living in Tennessee.
Based upon this evidence, on 6 July 1979 the juvenile court found that the punishment imposed by the father upon Susan was beyond the scope of punishment allowable for a father in disciplining his child, that the conditions which caused Susan's *677 original deprivation in May of 1978 had not changed, and that there was no reason to believe that a change would occur if Susan were returned to her father's household. The juvenile court then concluded that Susan was a deprived child within the provisions of the Uniform Juvenile Court Act and ordered custody of Susan to remain with the Burleigh County social services until her eighteenth birthday. The juvenile court also recommended that the placement of Susan be continued with her sister, Debbie, in Memphis, Tennessee, and ordered the Tennessee social services authority to submit quarterly reports of the progress of Susan to the juvenile court.
The father appealed the juvenile court order to this court.
The two issues raised by the father on appeal were whether or not Susan was a deprived child under the provisions of the Uniform Juvenile Court Act, and whether or not the juvenile court erred in considering that part of the testimony of the Burleigh County social workers which relied upon statements made to them by Tennessee social service officials.
The scope of appellate review in North Dakota child deprivation cases is governed by § 27-20-56(1), NDCC, which provides that review is based upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court. We are, therefore, not governed by the "clearly erroneous" rule of Rule 52(a), North Dakota Rules of Civil Procedure, but are allowed to reexamine the evidence in a manner similar to the former trial de novo. Jacobson v. V. S., 271 N.W.2d 562 (N.D. 1978); In Interest of R. W. B., 241 N.W.2d 546 (N.D.1976).
Under the Uniform Juvenile Court Act, Ch. 27-20, NDCC, the entire jurisdiction of the juvenile court is dependent upon a finding that the child is in fact "deprived," and this finding must be supported by clear and convincing evidence. Section 27-20-03, NDCC; Bjerke v. D. T., 248 N.W.2d 808 (N.D.1976); In Interest of M. L., 239 N.W.2d 289 (N.D.1976). A "deprived child" is defined in § 27-20-02(5)(a), NDCC, as follows:
"5. `Deprived child' means a child who:
a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of his parents, guardian, or other custodian;" [Emphasis ours.]
The juvenile court in this case found that the punishment imposed by the father upon his daughter was beyond the scope of punishment allowable for use by a father in disciplining his child and that that punishment was not in the best interests of Susan. On appeal, the father argued that this finding was not supported by clear and convincing evidence and that, therefore, Susan was not a deprived child and was not without the proper parental care or control necessary for her physical, mental, or emotional health or morals.
In Interest of R. H., 262 N.W.2d 719 (N.D.1978), an appeal from a juvenile court order which found four minor children deprived and terminated all parental rights, we interpreted the term "proper parental care" as used in § 27-20-02(5)(a), NDCC, to mean that the parents' conduct in raising their children must satisfy the "minimum standards of care which the community will tolerate." 262 N.W.2d at 724. Thus, if the conduct of the father in disciplining his daughter was so excessive and harsh as to come below the minimum standards of care tolerable by the community, then Susan was without the proper parental care necessary for her physical, mental, or emotional health or morals and was a "deprived child" as that term is defined in § 27-20-02(5)(a), NDCC.
With regard to minimum standards of care which the community will tolerate, we decline the invitation of counsel for the father to establish rigid guidelines or standards by which parents could determine *678 exactly how much physical discipline they are permitted to use on their children under the Uniform Juvenile Court Act. In our opinion such action by this court would be an encroachment upon legislative terrain and would, more importantly, not be in the best interests of the children of this State who would unavoidably be affected. The minimum standard of care which the community will tolerate must be a flexible gauge which necessarily will vary dependent upon the health, age, size, and intelligence of the child involved, as well as the circumstances of the particular incident which warranted the disciplinary action. How much weight any one of these factors will have in a given case must also be determined by the facts of that case.
Here, we think that the evidence in the record clearly and convincingly demonstrated that the punishment inflicted by the father upon his 15-year-old daughter was beyond the scope of punishment allowable for use by a father in disciplining his child. After Susan denied ownership of several cigarette butts and some marijuana paraphernalia which were found beneath her bed by her father, he kicked his child and struck her on the head and repeatedly about her legs and backside with a leather belt. The beating left a number of bruises and welts on Susan's backside. Testimony in the record evidenced that corporal punishment of that nature was customary in the father's household and that he had no intention of changing his childrearing methods in the future. We agree with the juvenile court that Susan was a deprived child under § 27-20-02(5)(a), NDCC.
The father next argued that the juvenile court erred in considering the testimony of the Burleigh County social workers because that testimony relied upon statements made to the social workers by Tennessee social services officials and was, therefore, inadmissible hearsay evidence under Rule 802, North Dakota Rules of Evidence. No objection was made at the hearing to the introduction of such testimony because, as was pointed out by counsel for the father in the brief and at oral argument, the testimony was necessary to show what the opinions of the Burleigh County social workers were based upon.
This court stated many times that an assignment of error in the admission of evidence will not be reviewed on appeal unless proper and timely objection is made to the admissibility thereof, and that the admissibility of such evidence cannot be challenged for the first time on appeal. State v. Moore, 286 N.W.2d 274 (N.D.1979); Grenz v. Werre, 129 N.W.2d 681 (N.D.1964); Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897 (1951). We noted, in State v. Moore, supra, that this rule is in harmony with current Rule 103, NDREv, which provides that error may not be predicated upon a ruling which admits evidence involving a substantial right of the party affected unless a timely objection or motion to strike appears of record, stating the specific ground for objection, if the specific ground was not apparent from the context.
Because no objection was made to the social worker's testimony at the time of the hearing, we conclude that it was properly admitted into evidence.
Based upon the foregoing conclusions of this court, the judgment of the juvenile court is affirmed.
ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.
VANDE WALLE, Justice, concurring specially.
I reluctantly concur in the majority opinion. I do not believe Justice Sand's opinion prohibits corporal punishment of children by parents. North Dakota has not enacted a law reportedly enacted in Sweden that prohibits corporal punishment of children by parents. The majority opinion clearly indicates that how much physical force parents are permitted to use in disciplining their children is governed by the minimum standard of care which the community will tolerate and that such a standard is a flexible, *679 not a rigid, standard.[1] Neither do I construe the majority opinion to mean that parents may not discipline their children, with physical force, if the children use tobacco and marijuana. The use of tobacco by minors is still a criminal offense in North Dakota. Sec. 12.1-31-03, N.D.C.C. The use of marijuana by any person, adult or minor, is also a criminal offense. Sec. 19-03.1-23(3), N.D.C.C. It is not surprising that parents who are concerned about the effect of these substances on their children and who find their children using these substances may become more inflamed and angry than they would be over the violation of a household rule established by the parents. However, I do not disagree that the force used in this instance might well have been excessive.
My concern is that the record apparently does not reflect a pattern of this level of physical punishment. The transcript of testimony at the hearing before the juvenile court does contain testimony of brothers and sisters that they, too, were subjected to physical punishment. There appear to be few incidents, regardless of how minor, that they failed to reveal to the court. There is no doubt from the record that C. W. believed in the use of physical punishment to discipline his children but that, of itself, does not constitute abuse or require a conclusion that the children were deprived. Nevertheless, in 1978 the juvenile court did determine that S. W. was a deprived child. As a result she was placed in a foster home with her sister. As the majority opinion states, we review the record in a manner similar to the former trial de novo. But in so doing, we are required to give appreciable weight to the findings of the juvenile court. Sec. 27-20-56, N.D.C.C.; In Interest of J. K. S., 274 N.W.2d 244 (N.D.1979).
There was no perfected appeal to this court on the issue of initial deprivation in 1978. The juvenile court again found in 1979 that S. W. was deprived. Before a child may be removed from her parents' control and custody the court must find the child to be deprived and must further find that the causes and conditions of deprivation are likely to continue or will not be remedied. In Interest of J. K. S., supra. I believe that in this instance we are dangerously close to determining that a child is deprived because of excessive use of physical punishment by the parent on one occasion. That punishment was for a problem, i. e., the use of tobacco and marijuana, about which more parents should be concerned. I am concerned, and I believe the other justices are concerned, about excessive governmental intervention in these matters.
I am well aware that in determining deprivation the standard is whether or not the child is deprived, whether or not the causes and conditions of deprivation are likely to continue or will not be remedied, and whether or not, by reason thereof, the child is suffering or will probably suffer physical, mental, moral, or emotional harm. The standard in deprivation or termination cases is not "the best interest of the child." See Interest of R. D. S., 259 N.W.2d 636 (N.D. 1977). But even with that understanding, and despite my concern about excessive intervention, it is difficult for me to determine that anything but a year of trouble would result if we were to conclude S. W. is not deprived and should return to her father's home. She has been living apart from her father since the summer of 1978. At least five months of that time was not as a result of any court order. She has shown no desire to return to her father's home. She will be 17 years of age in May of this year and will reach her 18th birthday in May of 1981, a little over a year away. At that time she will be free to choose her own place of residence without interference from her father or the juvenile court. I cannot help but be influenced by the fact that requiring S. W. to return to her father's home for a period of one year, after living apart from him for almost two years and without any desire on her part to return, would serve nobody's best interests.
NOTES
[1] There may be some persons in this community who will disagree that the use of a leather belt to discipline children, at least a child of 15 years of age, is unacceptable.