In the Interest of P. W. N., a child.

William H. BLORE, Petitioner
and Appellee,

v.

C. N. and L. N. and P. W. N.,
Respondents and Appellants.

Civ. No. 9828.

Supreme Court of North Dakota.

Jan. 23, 1981.

Michel W. Stefonowicz, Asst. State's Atty., Crosby, and Jeffrey J. Peterson, State's Atty., argued, Bowbells, for petitioner and appellee.

Bosard, McCutcheon, Holum & Rau, Minot, for respondents and appellants; argued by Robert S. Rau, Minot.

SAND, Justice.

This is an appeal by P.W.N., a child, from an order issued by the juvenile court of Ward County transferring jurisdiction of P.W.N. to the county court in and for Burke County having jurisdiction over the offense charged for prosecution.

In the early morning of 23 May 1980 P.W.N. allegedly shot Burke County sheriff Russell McIntyre. At the time of the shooting P.W.N. was 16 years of age. P.W.N. was taken into custody at approximately 10:00 a. m. on 23 May 1980 and an informal detention hearing was held on the same day resulting in an order for the further detention of P.W.N.

On 29 May 1980 a petition was filed in juvenile court which provided in part:

"That during the period from May 11, 1980 to May 23, 1980, said child ran away from his parental home and the said child committed the offenses of numerous burglaries, thefts, unlawful possession of firearms and attempted murder as well as the unruly act of runnaway away [sic] and refusing to obey reasonable and lawful commands of his parents."

On the same day the juvenile supervisor of Ward County filed a request for transfer of jurisdiction from juvenile court to an appropriate court having criminal jurisdiction over the offense charged.

The juvenile court set a transfer for 4 June 1980. The transfer hearing was delayed until 13 June 1980 through a stipulation of counsel and court order to permit an evaluation of P.W.N. at the North Dakota State Hospital in Jamestown, North Dakota.

P.W.N., his parents, and his court-appointed attorney appeared at the transfer hearing on 13 June 1980 and opposed the transfer of jurisdiction. After the transfer hearing and a separate hearing on a motion by P.W.N. to dismiss the petition based on allegations of statutory irregularities in the transfer proceedings, the juvenile court issued an order, dated 3 July 1980, which terminated juvenile court jurisdiction and transferred jurisdiction to the county court in and for Burke County having original jurisdiction over the offense charged. P.W.N. appealed from that order to this Court pursuant to § 27–20–56, North Dakota Century Code.[1]

P.W.N. raises several interrelated issues on appeal. P.W.N. asserts that a transfer hearing is the first part of the court proceedings in the adjudicatory phase of juvenile proceedings and is not a dispositional proceeding. Therefore, P.W.N. asserts that the rules of evidence apply to transfer hearings[2] and that hearsay evidence was improperly received and considered by the juvenile court in making its decision to transfer jurisdiction from juvenile court to adult court. A closely related question deals with whether or not P.W.N. was denied his constitutional and statutory rights to confront and cross-examine witnesses against him because of the use of the hearsay evidence.[3]

The Uniform Juvenile Court Act[4] in some sections refers to dispositions and adjudications. See §§ 27–20–30; 27–20–31; 27–20–32; 27–20–33; 27–20–35; 27–20–36; 27–20–39; and 27–20–40. We note that in some instances we have categorized juvenile proceedings into adjudicatory and dispositional phases. *Interest of T.M.M.*, 267 N.W.2d 807 (N.D.1978); *Interest of R.D.S.*, 259 N.W.2d 636 (N.D.1977). However, these cases and statutes do not deal with transfer hearings, and therefore are unpersuasive on the issue of whether or not a transfer hearing is adjudicatory or disposi-

1. Appeals from final orders of the juvenile court are authorized by § 27–20–56, NDCC. The issue of whether or not an order which terminates a juvenile court's jurisdiction is a final order is not before us on this appeal.

2. See Rule 1101(d)(3), North Dakota Rules of Evidence.

3. During the course of the transfer hearing four exhibits alleged by P.W.N. to be hearsay were introduced into evidence. One exhibit was a statement by Russell McIntyre which related to the events leading up to and surrounding the shooting. At the time of the transfer hearing McIntyre was in the hospital recovering from his wound. The second exhibit consisted of an authenticated copy of a petition for hearing in Chase County, Kansas, to declare P.W.N. a delinquent child because of certain thefts and a warrant for the arrest of P.W.N. The third exhibit was a letter from the North Dakota State Hospital in Jamestown, North Dakota, and consisted of a cover letter, dated 11 June 1980, a mental status examination dated 4 June 1980, a social history dated 9 June 1980, and a diagnostic staff note dated 5 June 1980. The fourth exhibit was a social study and investigative report prepared by William H. Blore, the director of juvenile court services for Ward and Burke Counties, in response to a request by the juvenile court.

The State apparently concedes that these exhibits are hearsay, and, for purposes of this appeal, we will treat the exhibits as hearsay without offering an opinion as to whether or not they are hearsay or fit into an exception to the hearsay rule.

4. The Uniform Juvenile Court Act was adopted in North Dakota in 1969. See Ch. 289, S.L. 1969. The Act is presently codified in Ch. 27–20, NDCC.

tional. Because of the unique aspects and requirements of a transfer hearing, we believe any such categorization is not warranted.

Transfer hearings provided for in § 27–20–34, NDCC, permit transfer to adult court for prosecution if:

"b. (1) The child was sixteen or more years of age at the time of the alleged conduct;

(2) A hearing on whether the transfer should be made is held in conformity with sections 27–20–24, 27–20–26, and 27–20–27;

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing; and

(4) The court finds that there are reasonable grounds to believe that:

(a) The child committed the delinquent act alleged;

(b) The child is not amenable to treatment or rehabilitation as a juvenile through available facilities;

(c) The child is not treatable in an institution for the mentally retarded or mentally ill; and

(d) The interests of the community require that the child be placed under legal restraint or discipline."

Pursuant to this section, a transfer hearing must be "in conformity with sections 27–20–24, 27–20–26, and 27–20–27." Section 27–20–24, NDCC, requires the hearing to be "in an informal but orderly manner" and, upon request of the court, the state's attorney "shall present the evidence in support of any allegations of the petition not admitted." Section 27–20–26 insures the right to counsel. Section 27–20–27 deals with other basic rights and provides in subdivision (1) as follows:

"1. A party is entitled to the opportunity to introduce evidence and otherwise

be heard in his own behalf and to cross-examine adverse witnesses."

The United States Supreme Court, in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), addressed the requirement of a transfer hearing when it stated:

"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. at 562, 86 S.Ct. at 1057, 16 L.Ed.2d at 97–98.

We recently dealt with transfer hearings and the right to cross-examine witnesses in *In Interest of K.G.*, 295 N.W.2d 323 (N.D. 1980). In that case the only evidence on the record relating to whether or not the child committed the delinquent act alleged was "remarks of the state's attorney, repeating statements made to him during a state's attorney's inquest and investigation." We held that:

"... when a matter is disputed, the [transfer] hearing requires that evidence supporting reasonable grounds to believe that the child committed the delinquent act must be produced by witnesses available for cross-examination." *In Interest of K.G.*, 295 N.W.2d at 326.

We also noted that the right of confrontation and cross-examination in § 27–20–27(1) lacked congruity with the requirement of § 27–20–29(4) that the juvenile court receive and consider "written reports ... not otherwise competent," at some stages of hearings involving delinquency proceedings and the requirement for this Court on appeals under § 27–20–56(1), to consider the "files, records, and minutes." However, the use of reports at transfer hearings was not before us then, and we declined to comment on their admissibility.[5]

---

5. See also, *In Interest of S.W.*, 290 N.W.2d 675 (N.D.1980) [testimony of Burleigh County social workers which relied on statements by

Tennessee social service officials was not objected to in juvenile court and not considered for the first time on appeal].

We believe that the "essentials of due process and fair treatment" required at transfer hearings by *Kent v. United States,* *supra,* and the requirements of § 27–20–27(1), NDCC, necessitate that evidence establishing reasonable grounds to believe that the child committed the delinquent act must be produced by witnesses available for cross-examination. *In Interest of K.G., supra.* However, we also believe that in order for the State to prove the other three requirements of § 27–20–34(1)(b)(4), hearsay, in the form of reports, is permissible out of practical necessity.

The information contained in these reports is highly probative of issues before the juvenile court in a transfer hearing. The information contained in these reports may deal with the history of juvenile court involvement and episodes of treatment of the child and, in some instances, may be hearsay. This information is necessary in order for the juvenile court to have a complete picture regarding the important issues before it. To require live witnesses to convey first-hand knowledge of these incidents would sometimes be highly impractical, especially, as here, when the incidents occurred in another jurisdiction. To require the juvenile court to make its decision regarding transfer without these reports would make the juvenile court operate in a vacuum, which is highly undesirable.

We also believe the commissioner's notes to § 34 of the Uniform Juvenile Court Act (which is the counterpart to § 27–20–34, NDCC), imply that the transfer hearing contemplates use of evidence which would be inadmissible in a hearing on the merits of a petition for delinquency. The comment to subsection (e) of § 34 provides as follows:

"On a hearing to transfer, the judge of necessity must hear and consider matters relating adversely to the child which would be inadmissible in a hearing on the merits of the petition. Hence, the need of avoiding their prejudicial effect by requiring over objection that another judge hear the charges made in the petition or in the criminal court if the case is transferred."

Although this comment is not binding on us, it is highly persuasive and supports the use of hearsay reports at a transfer hearing.

We conclude that witnesses whose testimony will be used to establish "reasonable grounds to believe the child committed the delinquent act" must be made available for confrontation and cross-examination in order to satisfy statutory requirements. However, hearsay evidence in the form of reports may be used to establish reasonable grounds to believe that the child is not amenable to treatment or rehabilitation as a juvenile through available facilities; that the child is not treatable in an institution for the mentally retarded or mentally ill; and that the interests of the community require that the child be placed under legal restraint or discipline.

We must now examine the alleged errors specified by P.W.N. to determine whether or not the juvenile court's findings were based on evidence satisfying these requirements.

P.W.N. asserts that the State's evidence did not satisfy the requirements of § 27–20–341(1)(b)(4).

This Court's review of cases arising under Ch. 27–20, NDCC, is governed by § 27–20–56(1), NDCC, which provides that the appeal shall be heard "upon the files, records, and minutes or transcript of evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." It is well established that in cases arising under Ch. 27–20, NDCC, we are not governed by the Rule 52(a), NDRCivP, "clearly erroneous" standard, but we are allowed to reexamine the evidence in a manner similar to the former trial de novo. E. g., *In Interest of S.W.,* 290 N.W.2d 675 (N.D.1980).

We note that the juvenile court in its findings made the following statement:

"... In my ruling I am not going to consider any hearsay other than that in Exhibits 2, 3 and 4. I am specifically excluding the testimony of Mr. Westphal and the statement of Mr. McIntyre. Although there is a dispute as to the admis-

sibility of hearsay, I feel there was not proper time for cross-examination and—especially Sheriff McIntyre's statement which I think was taken either a day or two days before the hearing. Exhibits 2, 3 and 4 relate—Exhibit 4 is the report of Mr. Blore. Counsel knows and I know that is rank hearsay. However, the statute provides for such a report and there is a maxim that we are all acquainted with that the law does not require idle acts. The Court requested under the authority of the statute for that report of Mr. Blore's and it was received. Therefore, I can't believe the law wanted me to shut my eyes on it. Therefore, I am considering it and Exhibits 4 and 3 and 2.... I find that ... [P.W.N.] was 16 or more years of age at the time of the alleged conduct. I secondly find there are reasonable grounds to believe that he committed the delinquent act alleged, and I am basing that solely on the testimony of Deputy Kremer. I believe his testimony, although it is circumstantial evidence, it is certainly sufficient circumstantial evidence to give me reason to believe the child did commit the offense charged. Secondly, I believe this child is not amenable to treatment or rehabilitation as a juvenile through available facilities. He has been through a long road of treatment in other states, more than one state. Mr. Boyer ......

"... Director of after-care at the State Training School testified that they do not have the facilities to handle a child such as this. Third, I find the child ... [P.W.N.] is not commitable to an institution for mentally retarded or mentally ill. Lastly, I find that the interests of the community require that this child be placed under legal restraint or discipline...."

We will now examine whether or not the State's evidence satisfies the requirement of "reasonable grounds to believe the child committed the delinquent act alleged." In doing so we must keep in mind that this requirement must be established by testimony of a witness available for cross-examination. We have, and continue to, equated

the phrase "reasonable grounds to believe the child committed the delinquent act" to that of *probable cause* and not to a finding of guilt beyond a reasonable doubt. *In Interest of A.D.L.*, 301 N.W.2d 380 (N.D. 1981).

Deputy Stephen Kremer testified that he was present at the shooting. Deputy Kremer testified that at the time of the shooting he was standing by the driver's door on the passenger's side of a school bus containing two occupants. One occupant was sitting in the driver's seat, and the other occupant, P.W.N., was sitting at "about the second window back from the driver's door." Deputy Kremer testified that he observed a "flame" from the area in the bus where P.W.N. was sitting and then saw Sheriff McIntyre fall from the bus into the ditch.

■ Our review of the record establishes that the testimony of deputy Stephen Kremer relied on by the juvenile court, in and of itself, constitutes probable cause to believe P.W.N. committed the delinquent act. Deputy Kremer was available for confrontation and cross-examination, and therefore P.W.N. was not denied his statutory or constitutional rights in this respect.

■ P.W.N. next asserts that the State's evidence does not establish reasonable grounds to believe that he is not amenable to treatment or rehabilitation as a juvenile through available facilities; that he is not treatable in an institution for the mentally retarded or the mentally ill; and that the interests of the community require that he be placed under legal restraints or discipline.

Our review of the record discloses that the State has met its burden of proof in regard to these aspects.

First, with respect to whether or not P.W.N. is amenable to treatment or rehabilitation as a juvenile through available facilities, we believe the social history and investigative report prepared by William Blore, the director of juvenile court services for Ward and Burke Counties, is highly proba-

tive on this issue. That report reflects the delinquent background of P.W.N. and points out that he had on one occasion failed to appear for a dispositional hearing after being adjudicated a delinquent. The report also indicates that there were referrals for various incidents in which neither P.W.N. nor his parents appeared at in-take conferences. Furthermore, Blore testified as follows:

> "For the purpose of a transfer hearing, I believe that an individual who is alleged to have committed the act of attempted murder is a dangerous violent offender and if that person committed such an act in my experience there is no juvenile institution in our state that is capable of providing an adequate treatment and rehabilitation program coupled with the responsibility to protect the community and the public at large."

The letter transmitting the report of the North Dakota State Hospital stated that "for purposes of any potential rehabilitation individuals such as ... [P.W.N.] do not respond well in an open situation but need a highly structured environment where his behavior can be carefully controlled."

Gordon Boyer, the after-care coordinator for the State Industrial School in Mandan, testified as to the Industrial School's facilities. His testimony indicates that the State Industrial School would not provide a "highly structured environment" where an individual's behavior could be "carefully controlled."

With respect to whether or not P.W.N. is treatable in an institution for the mentally retarded or the mentally ill, we believe the correspondence from the State Hospital is dispositive of this issue. The cover letter to that correspondence provides, in part, as follows:

> "Treatment in an institution for the mentally retarded or mentally ill is not appropriate. It is our opinion that ... [P.W.N.] is not suffering from a mental disease or disorder and that he is of average intelligence."

P.W.N. points out that the juvenile court judge used the term "commitable" rather than "treatable" in his statement from the bench. P.W.N. also correctly points out that the requirement of § 27–20–34(1)(b)(4)(c), NDCC, was changed from "commitable" to "treatable" in 1975. While the use of the term "commitable" by the judge at the hearing may not have been technically correct, we do note that the order transferring jurisdiction signed by the judge stated that "said child is not treatable in an institution for the mentally retarded or mentally ill." Furthermore, our de novo review of the record leads us to agree with the judge that P.W.N. is not treatable in an institution for the mentally retarded or mentally ill.

With respect to whether or not there were reasonable grounds to believe that the interests of the community required that P.W.N. be placed under legal restraint or discipline, we believe that the social report and investigation prepared by William Blore at the request of the court reflects a pattern of continued disregard for the law and for the rights of others. We cannot disregard the violent nature of the alleged offense, which is discussed later. Under these circumstances we agree with the judge and conclude that the interests of the community require that P.W.N. be placed under legal restraint or discipline.

■ Section 27–20–34(1), NDCC, does not require that the nature and severity of the offense must be taken into consideration at the transfer hearing to determine if treatment and rehabilitation as a juvenile can be accomplished through available facilities or if the interests of the community require that the child be placed under legal restraints or discipline.[6] One State has held under the law that the number and severity of the offenses, standing alone, may not be the sole basis to establish these requirements at the transfer hearing. *J. G. B. v. State*, 136 Ga.App. 75, 220 S.E.2d 79 (1975).

---

**6.** We do note that if the juvenile is adjudicated a delinquent after a hearing on the petition, the seriousness of the offense may be considered to determine whether or not the juvenile is in need of treatment or rehabilitation. Section 27–20–29(2), NDCC.

However, this same authority necessarily implies that it may or should be given some consideration.

To meet and satisfy the provisions of § 27–20–34(1) we cannot escape realities and disregard the nature of the offense which the child is alleged to have committed because it constitutes a basis for determining whether or not the child is amenable to treatment or rehabilitation as a juvenile through available facilities. Experience tells us that a child committing an offense of violence requires a course of treatment different than a child committing a non-violent offense. Similarly, the interests of the community and legal restraint and discipline will vary depending upon the nature of the offense. Accordingly, we believe the nature and severity of the offense must be given some consideration at a transfer hearing. We note that § 27–20–29(2) provides "In the absence of evidence to the contrary evidence of the commission of acts which constitute a felony is sufficient to sustain a finding that the child is in need of treatment or rehabilitation."

Based on the violent nature and seriousness of the alleged offense in this instance and the reports, as well as testimony introduced into evidence, we conclude that the record supports the juvenile court's order.

An issue closely related to whether or not the evidence supports the juvenile court's findings concerns the juvenile court's statements of reasons for transferring jurisdiction. P.W.N. asserts that the juvenile court's findings and the reasonable grounds therefore were not supported by a statement of reasons by the court for its findings. The order, dated 3 July 1980, merely recites the elements contained in the statute. However, the juvenile court judge from the bench set forth some reasons and considerations for his order. See *supra.*

The United States Supreme Court, in *Kent v. United States, supra,* dealt with the necessity of reasons or considerations when it stated:

"Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver [transfer] order with a statement of the reasons or considerations therefore. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." *Kent v. United States,* 383 U.S. at 561, 86 S.Ct. at 1057.

Although, in this instance, the reasons or considerations are not a model of perfection, we believe the juvenile court's statement from the bench demonstrates that the matter received the careful consideration of the juvenile court and that the basis for the order was set forth with sufficient specificity to permit meaningful review. We conclude that the juvenile court's findings meet the due process requirement.

The last issue raised by P.W.N. is that several procedural defects occurred which deprived him of his statutorily guaranteed rights.

The first procedural defect asserted by P.W.N. is that no summons was issued to him or his parents pursuant to § 27–20–22(1), NDCC, requiring them to appear before the court at the time fixed to answer the allegations of the petition. P.W.N. points out that because he was in continued detention from and after 23 May 1980 the hearing on the petition should have been no later than ten days after the filing of the petition. Section 27–20–22(1), NDCC. P.W.N. asserts that the petition alleging the delinquent acts must be dismissed pur-

suant to § 27–20–24(2)[7] because there has been no hearing on the petition within the 10-day time requirement of § 27–20–22(1), NDCC. In connection with this, P.W.N. contends that because the request for transfer of jurisdiction initially rests upon the filing of a valid petition alleging delinquency with the juvenile court, and if the petition must be dismissed because the required hearing on the petition was not held within the specified time, then the request for transfer of jurisdiction based in part on the petition must also be dismissed.

In construing a statutory provision a strong effort must be made to give meaning to every word, clause, and sentence in the enactment. *Brenna v. Hjelle*, 161 N.W.2d 356 (N.D.1968). The statutory sections relevant in this instance were all originally portions of the same legislative enactment. Thus, these sections must be read together and, if possible, given a workable meaning.

We construe the provisions of Ch. 27–20, NDCC, as encompassing two interrelated but separate procedural steps once a petition is filed alleging delinquency based upon conduct which is designated a crime or public offense under the laws of our State.

The first step can be designated the filing of a petition which requires a summons to be issued pursuant to § 27–20–22, NDCC, for a hearing on the petition within the prescribed time period unless a transfer of jurisdiction is implemented. The second step becomes operative whenever a request for a transfer of jurisdiction from juvenile court to adult court pursuant to § 27–20–34, NDCC, is made after the petition is filed. If the second step is followed, notice of a transfer hearing must be given to "the child and his parents, guardian, or other custodian three days before the hearing" and the transfer hearing must be held within the time limits of § 27–20–22(1), NDCC. See § 27–20–34(1)(b)(2); § 27–20–24(2); § 27–20–22(1), NDCC. We believe that in order

to give meaningful consideration to all of the language found in the statutory provisions of a transfer hearing and to make the provisions workable within the framework of the time limitations imposed for a hearing on the petition, we must conclude that the time period is tolled for the hearing on the petition whenever a request for transfer to adult court is filed until the transfer issue is resolved. If the transfer is granted, then juvenile court jurisdiction is terminated and it is not necessary for a summons and a hearing on the petition in juvenile court. If the transfer is denied, then the juvenile court retains jurisdiction and a summons and a hearing on the petition must be had within the time limitations of § 27–20–22(1), NDCC from and after the date of denial of transfer.

In the instant case, the petition alleging the acts against P.W.N. was filed on 29 May 1980. Notice of a transfer hearing to be held on 4 June 1980 was also filed on 29 May 1980. On 30 May 1980 an amended notice of a hearing on the transfer of jurisdiction was filed "due to the request of legal counsel for . . . [P.W.N.]," and the transfer hearing was rescheduled and was held on 13 June 1980. Because the transfer hearing was delayed at the request of P.W.N. he cannot claim error for not having the hearing within ten days as contemplated by § 27–20–22(1). P.W.N. cannot have it both ways, that is, ask for something, and when he receives it claim error. An order transferring jurisdiction was filed on 3 July 1980. In this instance the juvenile court's jurisdiction was terminated with the 3 July 1980 order and therefore it was no longer necessary to issue a summons and hold a hearing on the petition, as stated in the first alternative, *supra*, to determine whether or not there was proof beyond a reasonable doubt that P.W.N. committed a delinquent act because this question will be heard and resolved in the court to which jurisdiction was transferred.

7. Section 27–20–24(2), NDCC, provides as follows:

"2. If the hearing has not been held within the time limit, or any extension thereof, required by subsection 1 of section 27–20–22, the petition shall be dismissed."

The next procedural defect asserted by P.W.N. relates to an amendment to the petition filed on 18 June 1980. P.W.N. asserts that the juvenile court Act does not authorize amendments to the petition.

■ At the transfer hearing, P.W.N. pointed out that pursuant to § 27–20–21, NDCC, the petition must state where the child is in custody. The original petition provided that P.W.N. was placed under arrest on 23 May 1980 and that he was placed in juvenile detention pending a juvenile court hearing requesting a transfer of jurisdiction to adult court. The amended petition reflects:

> "That said child was taken into custody in Burke County at ten o'clock a. m. May 23, 1980 and delivered to Ward County Detention in Minot, North Dakota, at approximately three o'clock p. m. Said Juvenile has remained in detention in Ward County except for a period of evaluation at Jamestown State Hospital provided for in the Court's Order dated 30/May/1980."

We note that both the Rules of Civil Procedure and Criminal Procedure permit amendments to complaints. See Rule 15, NDRCivP; Rule 3, NDRCrimP. While these rules do not apply to juvenile proceedings, the concept that amendments can be made is merely illustrative that amendments are generally permitted in our jurisprudence system provided the ends of justice are not diverted. The petition is in essence the complaint in the juvenile court system and, in some instances, the proper administration of justice requires an amendment. Furthermore, it is implicit in our decisions under Ch. 27–20, NDCC, that amendments to a petition are allowed. See *Jacobson v. V.S.*, 271 N.W.2d 562 (N.D. 1978). We conclude that the amendment to the petition was proper.

P.W.N. also contends that the amended petition contains no endorsement stating that the filing of the petition is in the best interest of the public and the child as required by § 27–20–19, NDCC, and that the amended petition is not verified as required by § 27–20–21, NDCC.

With regard to the question of endorsement, we note that the amended petition contains the following language:

> "... it is in the best interest of said child and the State of North Dakota that a further investigation be had in said matter ..."

■ We note that § 27–20–21, NDCC, provides that "the petition shall be verified and may be on information and belief." The original petition contained a verification. The basic charges, including attempted murder, were set out in the original petition and were not altered in the amended petition. The anomaly between a verified petition and a petition on information and belief is apparent. The verification provision in Ch. 27–20, NDCC, may have a multiple purpose and we believe the primary purpose is to avoid frivolous petitions and to assist the juvenile court in determining if the petition should be approved to set into motion certain procedural steps. P.W.N. has not illustrated in what manner the lack of verification has deprived him of due process of law or of a fair hearing, and to us it is not obvious. In this instance we believe the basic objectives and purposes of the petition to reliably inform were accomplished and as such the statutory requirements were satisfied.

P.W.N. also asserts that the petition and amended petition are constitutionally infirm because the offense alleged, attempted murder, is not a crime under North Dakota law. A reading of §§ 12.1–06–01 and 12.1–16–01, NDCC, disclose that P.W.N.'s contention is without foundation and merits no further discussion.

*In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), dealt with due process requirements for notice of charges in a juvenile context. The United States Supreme Court held that:

> "Notice, to comply with due process requirements ... must 'set forth the alleged misconduct with particularity.' ... Notice at that time is not timely; and even if there were a conceivable purpose served by the deferral proposed by the court below, it would have to yield to the

requirements that the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing .... Due process of law requires notice of the sort we have described—that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding...." *Re Gault*, 387 U.S. at 33, 87 S.Ct. at 1446.

 The record discloses that both the original petition and the amended petition set forth the factual allegations of P.W.N.'s alleged misconduct with sufficient specificity to satisfy the due process requirements of notice.

 P.W.N. next asserts that there is no statutory authority for the juvenile supervisor to request a transfer of jurisdiction from juvenile court to adult court. The duties of the juvenile supervisor, as set forth in § 27–20–06, NDCC, provides in part that the juvenile supervisor shall make "recommendations to the juvenile court." Within the context of a workable juvenile court system, it is a necessarily implied duty that one of these recommendations to the juvenile court may be a request to transfer jurisdiction to an adult court.

The last procedural defect asserted by P.W.N. is that the original petition was not timely filed. P.W.N. points to the first sentence of § 27–20–17(2), NDCC, which requires the petition to be "promptly made and presented to the court." P.W.N. then construes "promptly" to be 96 hours, which is the time within which an informal detention hearing must be held to determine whether or not continued detention or shelter care is required for the child.

 We do not construe § 27–20–17(2) to require the petition to be filed within 96 hours. The 96-hour limitation refers only to the time within which an informal detention hearing must be held to determine whether or not further detention is warranted, and, is in some respects similar to a hearing for bail in the criminal context. Some investigation prior to filing a petition is necessary to establish whether or not this remedy is needed. In order to conduct an investigation some flexibility is needed in the time limitation in which to file a petition. The Legislature provided this flexibility by requiring the petition to be promptly filed, and, in this instance, we cannot conclude that the petition was not timely filed.

Accordingly, for the reasons stated in this opinion, the order of the juvenile court is affirmed.

ERICKSTAD, C. J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.