In the Interest of J. K. S., a Child.

Cynthia A. ROTHE, Petitioner and Appellee,

v.

P. S., Respondent,

G. S., Respondent and Appellant,

and

J. K. S., Respondent.

Civ. No. 10126.

Supreme Court of North Dakota.

July 1, 1982.

Edward J. Murphy, Fargo, for respondent and appellant, G. S.

James Twomey, Asst. States Atty., Fargo, for petitioner and appellee.

Steven Mottinger, Fargo, guardian ad litem for respondent, J. K. S.

PAULSON, Justice.

G. S. appeals from the order of the Juvenile Court of Cass County dated October 19, 1981, which affirmed the juvenile referee's findings and recommendations that the

court's order of August 16, 1977, be extended to March 16, 1982. We affirm.

On August 16, 1977, the juvenile referee issued findings and recommendations, finding that J. K. S. (hereinafter "Jane", a pseudonym) was a deprived child and recommending that she be placed in the custody of the County Director of the Cass County Social Service Board for a period of two years. The juvenile court adopted the referee's findings and recommendations on August 16, 1977. Jane's mother, G. S. (hereinafter "Gail," a pseudonym), requested a review of the findings and recommendations pursuant to § 27–20–07(5) of the North Dakota Century Code, and the court issued its order affirming the findings and recommendations on January 30, 1978. Gail appealed to this Court, and on January 8, 1979, we affirmed the order of the juvenile court. *In Interest of J. K. S.*, 274 N.W.2d 244 (N.D.1979).[1]

By orders dated August 2, 1979, and April 10, 1980, the juvenile court extended its original order through August 17, 1981. On August 14, September 9, and September 14, 1981, the juvenile referee conducted hearings on the State's petition to further extend the 1977 order. On September 14, 1981, the juvenile referee recommended that the original order be extended through March 16, 1982. Gail requested review of the referee's findings and recommendations pursuant to § 27–20–07(5), N.D.C.C., and on October 19, 1981, the court issued its order affirming the findings and recommendations. Gail has appealed from the October 19, 1981, order.

Jane has been living in foster homes in Fargo since 1977. For a short time thereafter, Gail visited Jane fairly regularly. Visits between Gail and Jane became more sporadic in 1978, and in late 1978 or early 1979 Gail moved to Wahpeton, North Dakota. Gail had no contact with Jane between April 19, 1979, and August 14, 1981, a period of nearly 2½ years. Gail visited Jane on August 14 and September 8, 1981, each visit

coinciding with a scheduled hearing on the State's petition. Beverly Bohn, a social worker at Cass County Social Services, testified that at the August 14, 1981, visit between Jane and Gail, Gail presented Jane with a birthday card designed for a five-year-old child. Jane was in fact only four years old, and her birthday had been in May. When questioned by Ms. Bohn about the card, Gail replied that she thought that Jane was five years old.

Gail presented evidence at the hearings which indicated that her life had dramatically changed for the better. On June 26, 1981, she had married B. T., and they were living with B. T.'s parents in Lidgerwood, North Dakota. Gail's mother-in-law testified that Gail helped with the cooking, cleaning, and other housework, and stated that the family was willing to accept Jane into their home and would assist Gail in caring for Jane if she received custody. In addition, Gail presented evidence that Lidgerwood has the necessary educational and medical facilities to provide for Jane's needs.

The juvenile referee did not include in his findings and recommendations of September 14, 1981, a specific finding that Jane continued to be a deprived child. Gail contends on appeal that such a finding is necessary before the juvenile court may extend its original order, and that the evidence presented in this case does not support a finding of continued deprivation by clear and convincing evidence.

■ Our scope of review of decisions under the Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C., is governed by § 27–20–56(1), N.D.C.C., which provides that review is based upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court. Our review is not limited to a determination of whether or not the juvenile court's findings are clearly erroneous, but rather we are allowed to reexamine the evidence in a

1. The facts which supported the initial finding of deprivation are set out in full in our previous opinion in this case.

manner similar to the former procedure of trial de novo. *In Interest of L. N.*, 319 N.W.2d 801, 803 (N.D.1982); *In Interest of S. W.*, 290 N.W.2d 675, 677 (N.D.1980); *In Interest of R. H.*, 289 N.W.2d 791, 793 (N.D. 1980).

■ An order of disposition by a juvenile court under the Uniform Juvenile Court Act may be extended by the court for a further period of time pursuant to § 27–20–36(4), N.D.C.C., which provides:

"4. Except as provided in subsection 1, the court may sooner terminate an order of disposition or extend its duration for further periods. An order of extension may be made if:

a. A hearing is held prior to the expiration of the order upon motion of a party or on the court's own motion;

b. Reasonable notice of the hearing and opportunity to be heard are given to the parties affected;

c. The court finds that the extension is necessary to accomplish the purposes of the order extended; and

d. The extension does not exceed eighteen months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order."

However, before the juvenile court may extend an order of disposition it must find that the child is still "deprived" as defined in § 27–20–02(5), N.D.C.C., because the jurisdiction of the juvenile court is dependent upon a finding that the child is in fact "deprived." § 27–20–03(1)(a), N.D.C.C.; *In Interest of S. W.*, *supra*, 290 N.W.2d at 677; *In Interest of R. H.*, *supra*, 289 N.W.2d at 793–794.

■ The juvenile referee in this case failed to make a specific finding that Jane continues to be a deprived child. When presented with a similar situation in *In Interest of R. H.*, *supra*, we concluded that a finding of continued deprivation could be inferred from the court's statements at the close of the hearing and from statements contained in the court's written findings. *In Interest of R. H.*, *supra*, 289 N.W.2d at 794. We believe that a finding of continued

deprivation can also be inferred in this case from the juvenile referee's oral and written statements. The initial finding of deprivation in this case was based primarily upon Gail's lack of concern for Jane and her resistance to efforts made to improve her skills and knowledge in properly caring for Jane. *In Interest of J. K. S.*, *supra*, 274 N.W.2d at 252. In his oral statements at the close of the hearings and in his written findings, the juvenile referee in this case expressed his concern that Gail had not made any real effort to see or to maintain any kind of contact with Jane for a period of nearly 2½ years. Based upon these statements we believe a finding of continued deprivation may be inferred, and the juvenile court's jurisdiction was thereby sufficiently established. *See In Interest of R. H.*, *supra*, 289 N.W.2d at 794. We stress, however, that a finding of deprivation should have been, and in the future should be, specifically included in the extension order. *In Interest of R. H.*, *supra*, 289 N.W.2d at 794.

■ We next consider Gail's argument that the evidence presented does not support a finding of continued deprivation by clear and convincing evidence. A deprived child is defined in § 27–20–02(5), N.D.C.C., as a child who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for one child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of one child's parents, guardian, or other custodian; ..." The term "proper parental care" means that the parents' conduct in raising their children must satisfy the minimum standards of care which the community will tolerate. *In Interest of L. N.*, *supra*, 319 N.W.2d at 802; *In Interest of S. W.*, *supra*, 290 N.W.2d at 677. The finding of deprivation must be supported by clear and convincing evidence. *In Interest of S. W.*, *supra*, 290 N.W.2d at 677; *In Interest of K. P.*, 267 N.W.2d 1, 3 (N.D.1978).

■ We conclude that there is clear and convincing evidence to support a finding of deprivation in this case. As previously noted, the original finding of deprivation was based in part upon Gail's lack of concern for Jane. The evidence presented at the hearings clearly and convincingly established that Gail's lack of concern for Jane's well-being has continued. For a period of over two years, Gail made no real effort to see Jane or maintain contact with her. Although Gail testified that her failure to visit Jane was precipitated by her inability to travel from her home in Wahpeton to Fargo due to financial difficulties, we note that the record shows that Gail voluntarily moved from Fargo, where Jane had been placed in foster care, to Wahpeton for other than financial reasons. Even after her marriage, Gail attempted to arrange a visit with Jane only after she had received notification of the State's petition and the scheduled hearings on extending the prior order of disposition. Beverly Bohn testified that she offered to bring Jane to the Wahpeton-Breckenridge area for visitations if Gail could not find transportation to Fargo, but that Gail did not respond to this suggestion. When Gail did finally visit Jane on August 14, 1981, she did not know how old Jane was. Upon reviewing the records, files, and transcripts of the juvenile court, we conclude that the evidence clearly and convincingly establishes that Jane is a deprived child.

Finally, we consider whether or not the juvenile court erred in extending the original order through March 16, 1982. Section 27–20–36(4), N.D.C.C., provides that an order of extension may be made if the court finds that the extension is necessary to accomplish the purposes of the order extended. In this case, the purpose of the original 1977 order was to protect Jane's best interests by removing her from her mother's custody and placing her in foster care. It would not have been in Jane's best interests to return her to Gail's custody when they had only seen each other twice in two and one-half years. By extending the prior order for a period of six months, the juvenile court was allowing Gail a further opportunity to establish a regular visitation schedule and to reestablish a close relationship with her daughter.

We note that the extended order expired on March 16, 1982, prior to the oral arguments in this case. At oral arguments, we were informed by counsel for the petitioner that the order had been extended pending the outcome of this appeal, with further hearings to be held following release of our decision. At that time, the juvenile court will be able to determine whether or not Gail has made attempts in the time since the September, 1981, hearing to reestablish a meaningful relationship with her daughter. We would also suggest that a home study and parenting-skills evaluation be conducted to aid in determining whether or not Gail would be capable of providing the necessary care for Jane if custody were to be returned to her.

The order of the juvenile court dated October 19, 1981, is affirmed.

ERICKSTAD, C. J., and SAND, VANDE WALLE and PEDERSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I agree with the majority opinion. I interpret the statements therein relative to the opportunity for Gail to establish a close relationship with her daughter and to a home study and parenting-skills evaluation to indicate that the county social service agency should make an affirmative effort to assist Gail in establishing a relationship which would permit the mother and daughter to be permanently reunited. It is apparent that Gail's life prior to her marriage was considerably different from that subsequent to her marriage. Despite that fact, if no affirmative effort is made to assist Gail in establishing a close relationship with her daughter and if the extension of the order is construed to merely allow Gail time to show the requisite interest, the attempt to reunite mother and daughter may well fail. Gail may not without affirmative assistance be able to overcome in a few short months the attitudes established in the several

years of her prior lifestyle. Hopefully, the aim of the social service agency is to reunite child and parent if possible. To that end, affirmative action on the part of the agency is required. The only other alternative for a normal family life for this child would appear to be adoption, and that should be considered only if the social service agency has exhausted all attempts at establishing an acceptable mother-daughter relationship.