## IN RE RALPH M.*
## (13422)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 6, 1988—decision released May 23, 1989

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

*Kent Drager,* assistant public defender, for the appellant (respondent).

*Francis J. Carino,* chief state's advocate, for the appellee (state).

CALLAHAN, J. This is an appeal from an order of the Superior Court for Juvenile Matters at Hartford requiring the respondent to be transferred from the juvenile docket to the regular criminal docket of the Superior Court to be tried and, if convicted, sentenced as an adult. The case arises out of an incident on September 17, 1987, when Matthew Cauley was fatally shot by one of several teens from an automobile being operated on Vine Street in Hartford. The respondent, a passenger in the car, was fifteen years old when the slaying took place and, therefore, a "child" whose offenses would ordinarily be treated as juvenile matters. General Statutes §§ 46b-120, 46b-121.[1] After his arrest

---

[1] "[General Statutes (Rev. to 1987)] Sec. 46b-120. (Formerly Sec. 51-301). DEFINITIONS. The terms used in this chapter shall, in its interpretation and in the interpretation of other statutes, be defined as follows: 'Child' means any person under sixteen years of age; 'youth' means any person sixteen to eighteen years of age; 'abused' means that a child or youth (a) has had physical injury or injuries inflicted upon him other than by accidental means, or (b) has injuries which are at variance with the history given of them, or (c) is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment; a child may be found 'defective' who, by reason of a deficiency or defect of intelligence, which has existed from birth or from early age, requires, or will require, for his protection

pursuant to a warrant, the respondent was brought to the Superior Court in Hartford where an information

or for the protection of others, special care, supervision and control; a child may be found 'delinquent' (1) who has violated any federal or state law or municipal or local ordinance, other than an ordinance regulating behavior of a child in a family with service needs as defined in this section or (2) who has violated any order of the superior court; a child or youth may be found 'dependent' whose home is a suitable one for him, save for the financial inability of his parents, parent, guardian or other person maintaining such home, to provide the specialized care his condition requires; a 'family with service needs' means a family which includes a child who (A) has without just cause run away from his parental home or other properly authorized and lawful place of abode; (B) is beyond the control of his parent, parents, guardian or other custodian; (C) has engaged in indecent or immoral conduct; or (D) has been habitually truant or who, while in school, has been continuously and overtly defiant of school rules and regulations; a child or youth may be found 'neglected' who (i) has been abandoned or (ii) is being denied proper care and attention, physically, educationally, emotionally or morally or (iii) is being permitted to live under conditions, circumstances or associations injurious to his well-being, or (iv) has been abused; a child or youth may be found 'uncared for' who is homeless or whose home cannot provide the specialized care which his physical, emotional or mental condition requires. For the purposes of this section the treatment of any child by an accredited Christian Science practitioner in lieu of treatment by a licensed practitioner of the healing arts, shall not of itself constitute neglect or maltreatment. 'Serious juvenile offense' means the violation by a child, including attempt or conspiracy to violate sections 53-80a, 53-390 to 53-392, inclusive, 53a-54a to 53a-57, inclusive, 53a-59 to 53a-60c, inclusive, 53a-70 to 53a-71, inclusive, 53a-72b, 53a-86, 53a-92 to 53a-94, inclusive, 53a-95, 53a-101, 53a-111 to 53a-113, inclusive, subdivision (1) of subsection (a) of section 53a-122, subdivision (3) of subsection (a) of section 53a-123, 53a-134, 53a-135, 53a-166, 53a-167c, subsection (a) of section 53a-174, 53a-196a, 53a-211, or for having without just cause run away from any secure placement other than home while committed as a delinquent child to the commission of children and youth services for a serious juvenile offense. 'Serious juvenile offender' means any child adjudicated a delinquent child for commission of a serious juvenile offense.''

"[General Statutes (Rev. to 1987)] Sec. 46b-121. (Formerly Sec. 51-302). JUVENILE MATTERS DEFINED, AUTHORITY OF COURT. Juvenile matters include all proceedings concerning uncared-for, neglected or dependent children and youth and delinquent children within this state, termination of parental rights of children committed to a state agency, matters concerning families with service needs and contested termination of parental rights transferred from the probate court, but does not include matters of guardianship and adoption or matters affecting property rights of any child or

was filed charging him with murder in violation of General Statutes §§ 53a-8 and 53a-54a,[2] and conspiracy

youth over which the probate court has jurisdiction. In such juvenile matters, the superior court shall have authority to make and enforce such orders directed to parents, including any person who acknowledges before said court paternity of a child born out of wedlock, guardians, custodians or other adult persons owing some legal duty to a child or youth therein, as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth subject to its jurisdiction or otherwise committed to or in the custody of the commissioner of children and youth services. Said court shall also have authority to grant and enforce injunctive relief, temporary or permanent in all proceedings concerning juvenile matters. If any order for the payment of money is issued by said court, the collection of such money shall be made by said court, except orders for support of children committed to any state agency or department, which orders shall be made payable to and collected by the department of administrative sevices. In juvenile matters, the court shall have authority to make and enforce orders directed to persons liable hereunder on petition of said department of administrative services made to said court in the same manner as is provided in section 17-324, in accordance with the provisions of subsection (b) of section 17-31i, section 17-32, 17-82e, 17-295, 17-295a, 46b-129 or 46b-130, and all of the provisions of section 17-324 shall be applicable to such proceedings. Any judge hearing a juvenile matter may make any other order in connection therewith within his authority to grant as a judge of the superior court and such order shall have the same force and effect as any other order of the superior court."

[2] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

"[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

to commit murder in violation of General Statutes § 53a-48.[3] The trial court ordered him transferred to the juvenile docket in accordance with General Statutes § 46b-133.[4] Thereafter, on October 15, 1987, a peti-

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

[3] "[General Statutes] Sec. 53a-48. CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[4] "[General Statutes] Sec. 46b-133. (Formerly Sec. 51-314). ARREST OF CHILD. RELEASE OR DETENTION OF ARRESTED CHILD. (a) Nothing in this part shall be construed as preventing the arrest of a child, with or without a warrant, as may be provided by law, or as preventing the issuance of warrants by judges in the manner provided by section 54-2a, except that no child shall be taken into custody on such process except on apprehension in the act, or on speedy information, or in other cases when the use of such process appears imperative. Whenever a child fourteen years of age or older is arrested and charged with a violation of any provision of title 53a which is designated as a felony, such child shall submit to the taking of his photograph, physical description and fingerprints.

"(b) Whenever a child is brought before a judge of the superior court, such judge shall immediately have the case proceeded upon as a juvenile matter. Such judge may admit such child to bail or release him in the custody of his parent or parents, his guardian or some other suitable person to appear before the superior court when ordered. If detention becomes necessary or desirable, the same shall be in the manner prescribed by this chapter.

"(c) Upon the arrest of any child by an officer, such officer may release him to the custody of his parent or parents, guardian or some other suitable person or agency or may immediately turn him over to a juvenile detention center.

"(d) The court or detention supervisor may turn such child over to a youth service program created for such purpose, if such course is practicable, or such child may be detained pending a hearing which shall be held on the business day next following his arrest. No child shall be detained after such

tion of alleged delinquency was filed pursuant to General Statutes § 46b-128 (1).[5] Acting on the basis of the

hearing or held in detention pursuant to a court order unless it appears from the available facts that there is probable cause to believe that the child has committed the acts alleged and that there is (1) a strong probability that the child will run away prior to court hearing or disposition, (2) a strong probability that the child will commit or attempt to commit other offenses injurious to him or to the community before court disposition, (3) probable cause to believe that the child's continued residence in his home pending disposition will not safeguard the best interests of the child or the community because of the serious and dangerous nature of the act or acts he is alleged to have committed, (4) a need to hold the child for another jurisdiction or (5) a need to hold the child to assure his appearance before the court, in view of his previous failure to respond to the court process. Such probable cause may be shown by sworn affidavit in lieu of testimony. No child shall be released from detention who is alleged to have committed a serious juvenile offense except by order of a judge of the superior court. In no case shall a child be confined in a community correctional center or lockup, or in any place where adults are or may be confined, except in the case of a nursing infant; nor shall any child at any time be held in solitary confinement. When a female child is held in custody, she shall, as far as possible, be in the charge of a woman attendant.

"(e) The police officer who brings a child into detention shall have first notified, or made a reasonable effort to notify, the parents or guardian of the child in question of the intended action and shall file at the detention center a signed statement setting forth the alleged delinquent conduct of the child. Unless the arrest was for a serious juvenile offense, the child may be released by a detention supervisor to the custody of his parent or parents, guardian or some other suitable person."

[5] "[General Statutes] Sec. 46b-128. (Formerly Sec. 51-309). INVESTIGATION OF DELINQUENCY COMPLAINT. NONJUDICIAL DISPOSITION. PETITION OF DELINQUENCY. Whenever the superior court is in receipt of any written complaint filed by any person, any public or private agency or any federal, state, city or town department maintaining that child's conduct constitutes delinquency within the meaning of section 46b-120, it shall make a preliminary investigation to determine whether the facts, if true, would be sufficient to be a juvenile matter and whether the interests of the public or the child require that further action be taken. If so, the court may authorize the filing of a verified petition of alleged delinquency or it may make without such petition whatever nonjudicial disposition is practicable, including the ordering of such child to do work of which he is capable in public buildings or on public property, particularly in cases in which the complaint alleges that the conduct of such child resulted in the willful destruction of property, provided the facts establishing jurisdiction are

murder charge, the prosecutor for juvenile matters moved to transfer the respondent from the juvenile docket to the regular criminal docket under the mandatory transfer provision of General Statutes § 46b-127 (1).[6] Following a transfer hearing, the court granted the state's motion, finding that there was probable cause to believe that the respondent had "committed murder for which he is charged . . . by virtue

admitted and that a competent acceptance of such a disposition has been given by the child and his parent or guardian. Nonjudicial supervision shall not be continued beyond three months unless reviewed and extended by the judge or the supervising officer's administrative superior, and then only when there is continuing acceptance of such action by the child and his parent or guardian. Each verified petition of delinquency filed by the court shall set forth plainly (1) the facts which bring the child within the jurisdiction of the court, (2) the name, date of birth, sex and residence of the child, (3) the names and residence of his parent or parents, guardian or other person having control of the child, and (4) a prayer for appropriate action by the court in conformity with the provisions of this chapter. Upon the filing of a delinquent petition, the court may, either forthwith or after investigation, cause a summons, which summons shall have a copy of said verified petition attached thereto, signed by the judge or by the clerk or assistant clerk of such court, to be issued, requiring the child and the parent or parents, guardian or other person having control of the child to appear in court at the time and place therein named. Whenever it appears to the judge that orders addressed to an adult, as set forth in section 46b-121, are necessary for the welfare of such child, a similar summons shall be issued and served upon such adult if he is not already in court. Service of summons, together with a copy of the verified petition, shall be made by the delivery of a true and attested copy thereof to the person summoned, or at his usual place of abode. If, after reasonable effort, personal service has not been made, such substitute service, by publication or otherwise, as the judge may order, shall be sufficient. Service may be made by any officer authorized by law to serve process, or by a probation officer, probation aide or indifferent person, and the court may allow suitable expenses and a reasonable fee therefor."

[6] General Statutes § 46b-127 (1) provides: "(Formerly Sec. 51-308). CHILD CHARGED WITH MURDER OR FELONY TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years."

of his being an accessory . . . ." On April 20, 1988, the respondent appealed the court's order to the Appellate Court and we transferred the case to ourselves shortly thereafter. Practice Book § 4023.

On appeal, the respondent attacks the court's transfer order claiming that it erred in concluding that he was susceptible to transfer under § 46b-127 (1) since, as an accessory to murder, he was not "referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive." Even if he were susceptible to the mandatory transfer provision of § 46b-127 (1), the respondent further claims that the court erred in ordering his transfer because: (1) its finding of probable cause was based on certain statements that were improperly admitted into evidence; (2) there was an insufficient finding of probable cause; and (3) General Statutes §§ 46b-126 and 46b-127 are unconstitutional. We determine that the court was correct in concluding that the respondent was susceptible to transfer under the mandatory transfer provision of § 46b-127 (1). Further, for reasons discussed in part II of this opinion, we determine that the court did not err when it transferred the respondent to the regular criminal docket.

I

The respondent first claims that he was not susceptible to transfer from the juvenile docket to the regular criminal docket under § 46b-127 (1) because that subsection of the statute does not specifically mention "aiding and abetting," as defined by § 53a-8, as grounds for a mandatory transfer, but rather, pertains to juveniles who have been "referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive."[7] The respondent argues that since he was

---

[7] Athough the respondent did not directly address this issue below, it was specifically raised by the state and ruled on by the transferring court. Because the court considered the issue, it was "distinctly raised" at trial

charged as an accessory to murder and not as a principal, he is not, because of the language of § 46b-127 (1), subject to transfer under that section. If he is to be transferred at all, the respondent contends, he must be transferred under § 46b-126[8] which is a discretion-

and, therefore, we will examine it on appeal. Practice Book § 4185; see *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 568 n.2, 409 A.2d 1202 (1979).

[8] "[General Statutes] Sec. 46b-126. (Formerly Sec. 51-307). CHILD CHARGED WITH A CLASS A FELONY OR SERIOUS JUVENILE OFFENSE TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. (a) The court shall hold a transfer hearing to determine whether it is appropriate to transfer and may transfer from the docket for juvenile matters to the regular criminal docket of the superior court any child referred for the commission of a class A felony, or for any serious juvenile offense designated as a class B or C felony if such child has previously been adjudicated a delinquent for a serious juvenile offense, as defined in section 46b-120, provided such child has attained the age of fourteen at the time the alleged delinquent act was committed. If the child is or has been under the custody of the commissioner of children and youth services, the commissioner shall provide any relevant information concerning the amenability of the child to treatment for use at the transfer hearing. No such transfer shall be valid unless, prior thereto, the court has made written findings after a hearing, that there is probable cause to believe that (1) the child has committed the act for which he is charged; (2) the child is not amenable to treatment in any institution or state agency or other available facility designed for the care and treatment of children to which said court may effect placement of such child which is suitable for his care or treatment; and (3) the prior adjudications of the child, together with the serious and dangerous nature of the acts and the physical, mental and emotional history and condition of the child, are such that the child is a danger to society and requires more secure and longer term handling than the juvenile justice system is able to provide and the institutions to which said court may sentence a defendant sixteen years of age or over are more suitable for the care and treatment of such child. An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen.

"(b) There shall be established or designated by the department of children and youth services a secure facility or facilities within the state devoted

ary statute requiring the transferring court to make more extensive findings than those required by § 46b-127 (1) prior to ordering a transfer.[9] He therefore seeks a remand for further proceedings under § 46b-126.

We rejected an almost identical argument in *Washington* v. *State,* 171 Conn. 683, 686–87, 372 A.2d 106 (1976). In *Washington,* we held that the Superior Court did not err in upholding the order of the court requiring a juvenile to be transferred to the regular criminal docket under General Statutes § 17-60a, the precursor of § 46b-126, after it found "reasonable cause" to believe that he was a participant in a felony murder. In doing so, we rejected the juvenile's argument that the legislature intended to eliminate from the transfer statute situations where the evidence indicated that "the child participated in a felony and might be guilty of murder under the felony-murder statute, but where he did not actually 'pull the trigger.' " Id., 686. Stating that the juvenile's "reasoning [was] strained," we held that when a court finds "reasonable cause" to believe that a juvenile is guilty of the crime of murder, "whether or not he personally sets in motion

---

to the care and treatment of children, which children are under the jurisdiction of the superior court. A consideration for admission to such a facility shall be adjudication for a serious juvenile offense."

[9] General Statutes § 46b-127 (1) requires that a juvenile be transferred to the regular criminal docket if he is at least fourteen years old at the time of the offense charged and if there is probable cause to believe that he has committed murder. General Statutes § 46b-126, on the other hand, requires not only a finding of probable cause that the child has committed the crime with which he is charged, but also a finding that the child is unamenable to treatment in available juvenile care and treatment facilities and that the child has demonstrated his dangerousness to society.

The respondent also maintains that because murder is a class A felony, he could be transferred under § 46b-127 (2) if he were found to have the requisite prior history cited in the statute. Stating that he does not have a prior history, the respondent seeks a remand under § 46b-126 only. For a discussion of the difference between §§ 46b-126 and 46b-127, see *State* v. *Torres,* 206 Conn. 346, 356–57, 538 A.2d 185 (1988).

the force which kills," the legislature intended the child to be transferred to the regular criminal docket. Id., 686–87.

The respondent in the present case recognizes that *Washington* v. *State,* supra, may be dispositive as to the issue presented, but urges us to reconsider that case, stating that since it was decided the transfer statutes have been substantially revised. He argues that, under the new transfer scheme embodied in §§ 46b-126 and 46b-127, the legislature intended to "correlate the seriousness of an offense charged with the juvenile's susceptibility to transfer to the regular criminal docket." *State* v. *Torres,* 206 Conn. 346, 355, 538 A.2d 185 (1988). Since he did not actually "pull the trigger," the respondent maintains that his crime is less serious than if he had done so, and, therefore the legislature intended him to be afforded more procedural safeguards than those that exist under the mandatory provision of § 46b-127 (1), pursuant to which he was transferred.[10]

The respondent's argument assumes too much. While he correctly points out that under §§ 46b-126 and 46b-127 the legislature intended to restrict the transfer of juveniles who have allegedly committed less serious offenses, he mistakenly assumes that it considered the charge of accessory to murder less serious than being charged as a principal. To the contrary, " 'Connecticut "long ago adopted the rule that there is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility. See *State* v. *Gargano,* 99 Conn. 103, 109, 121 A. 657 (1923); *State* v. *Hamlin,* 47 Conn. 95, 118 (1879); General Statutes (1875 Rev.) p. 545 [tit. XX, c. XIII, part X]. The modern approach 'is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the

---

[10] See footnote 9, supra.

other person in the commission of the crime. . . .' " ' " *In re Luis R.*, 204 Conn. 630, 637–38, 528 A.2d 1146 (1987); *State* v. *Harris,* 198 Conn. 158, 164, 502 A.2d 880 (1985). This view was adopted by the legislature and is expressed in § 53a-8. *In re Luis R.*, supra; *State* v. *Harris,* supra. Accordingly, " '[t]here is . . . no such crime as "being an accessory." *State* v. *Edwards,* 201 Conn. 125, 130, 513 A.2d 669 (1986); *State* v. *Harris,* [supra, 163]; *State* v. *Baker,* [195 Conn. 598, 608, 489 A.2d 1041 (1985)]. The defendant·is charged with committing one substantive offense; "[t]he accessory statute merely provides alternate means by which a substantive crime may be committed." *State* v. *Baker,* supra; *State* v. *Edwards,* supra, 131.' " *In re Luis R.*, supra, 637; *State* v. *Foster,* 202 Conn. 520, 528, 522 A.2d 277 (1987). Because the legislature is presumed to know the state of the law when it enacts a statute; *State* v. *Dabkowski,* 199 Conn. 193, 201, 506 A.2d 118 (1986); we can assume that, absent an affirmative statement to the contrary, it·did not intend to change the existing law to create a distinction between accessories and principals when it enacted the present transfer statutes.

Although the respondent attempts to distinguish the language of § 46b-127 (1) from the language of the statute discussed in *Washington* v. *State,* supra, the language in both statutes is essentially the same. The present statute, § 46b-127 (1) reads in relevant part: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder . . . . " The previous statute, General Statutes (Rev. to 1977) § 17-60a, read in relevant part: "The juvenile court shall have the authority to transfer to the jurisdiction of the superior court any child referred to it for the commission of a murder . . . ." Lacking any indication that the legislature intended to change the law regarding accessorial liability, we find the dis-

similarities between the two statutes to be a distinction without a relevant difference. The respondent's argument in this regard is, therefore, without merit. We conclude that because § 53a-8 does not define a separate and distinct crime, but only an alternative means by which the crime of murder may be committed, the trial court did not err in finding the respondent to be subject to transfer to the regular criminal docket of the Superior Court to be prosecuted as an adult under the mandatory provision of § 46b-127.

## II

The respondent next claims that the court erred in ordering his transfer under § 46b-127 (1) because: (1) it based its finding of probable cause on statements that should have been excluded from evidence because they were admitted at his transfer hearing in violation of his constitutional rights and the rules of evidence; (2) there was insufficient probable cause to believe that he had committed murder; and (3) §§ 46b-126 and 46b-127 are unconstitutional. We disagree.

## A

At the respondent's transfer hearing, the court ruled, over the state's objection, that it would conduct the proceeding as a "full evidentiary hearing" at which all of the rules of evidence would apply. The state took an exception to the court's ruling. Thereafter, the state offered the written statement of Antonio Garcia, an alleged coparticipant in the Cauley murder, claiming it to be admissible hearsay as a declaration against his penal interest. The court found Garcia to be unavailable because he had invoked his fifth amendment right against self-incrimination and admitted Garcia's written statement over the respondent's objection. On appeal, the respondent argues that the court was correct in ruling that the transfer hearing should proceed as a full evidentiary hearing. He claims, however, that

the court erred in admitting Garcia's statement into evidence because it was not admissible under any recognized exception to the hearsay rule and its admission deprived him of his right of confrontation and cross-examination. Because we conclude that the court erred in ruling that the respondent was entitled to a transfer hearing at which strict evidentiary standards applied, his objections concerning the admissibility of evidence, which objections may be viable at later proceedings, are not pertinent at this juncture.

In *Kent* v. *United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), the United States Supreme Court considered the procedural requirements for the relinquishment of the jurisdiction of the juvenile court as a condition to the trial of a juvenile in an adult criminal proceeding. The court's decision in *Kent* stressed that a juvenile court's determination to relinquish juvenile jurisdiction is a " 'critically important' proceeding" and therefore the child must be afforded a hearing prior to the entry of a transfer order.[11] Id., 560–61. The court also stressed, however, that the juvenile is not entitled to a formal adjudicatory style hearing.[12] This was noted

---

[11] In *Kent* v. *United States,* 383 U.S. 541, 554, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), the United States Supreme Court stated that in addition to a transfer hearing, due process requires that the juvenile also be afforded effective assistance of counsel and a written statement of reasons for the juvenile court's decision to transfer.

[12] In fact, in *Breed* v. *Jones,* 421 U.S. 519, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975), the United States Supreme Court held that principles of double jeopardy foreclosed the prosecution of a juvenile as an adult in the Superior Court after he had been subjected to a transfer hearing in the juvenile court that was adjudicatory in nature. Consistent with *Kent* v. *United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), however, the court in *Breed* stated that "nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. . . ." *Breed* v. *Jones,* supra, 538 n.18. Other than holding that states could not require an adjudicatory transfer hearing, the court in *Breed* v. *Jones,* supra, did not attempt to prescribe evidentiary standards at the transfer stage.

by the court on numerous occasions in its opinion and is best illustrated by the following passage: "We conclude that an opportunity for a hearing *which may be informal,* must be given the child . . . . We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment. *Pee* v. *United States,* 107 U.S. App. D.C. 47, 50, 247 F.2d 556, 559 (1959)." (Emphasis added.) Id., 561–62. In so holding, the court did not attempt to "prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." *Breed* v. *Jones,* 421 U.S. 519, 537, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975). Rather, the court in *Kent* left it to the states to determine the evidentiary standards applicable at the transfer stage.

Section 46b-127, in accord with *Kent* v. *United States,* supra, states in relevant part that "[n]o such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged." While the statute classifies the transfer hearing as a probable cause hearing, it does not, on its face, specify the type of evidence that the court should consider in making a determination of probable cause. The extensive legislative history of § 46b-127 also provides no indication of legislative intent as to the evidentiary standards applicable at transfer hearings. The respondent points to the comments made on the floor of the General Assembly by Representative Richard D. Tulisano calling for a "due process hearing" as proof that the legislature intended the court to apply the rules of evidence at transfer hearings. 26 H.R. Proc., Pt. 17, 1983 Sess., p. 6036. On close scrutiny, however, we find that Representative Tulisano's

comments were not made as any part of a discussion on the type of evidence that the court should consider at transfer hearings, but rather, were made to emphasize, in general, the need for a hearing at the transfer stage.[13] Further, Representative Tulisano's qualification of the word "hearing" with the term "due process" does not indicate that the legislature intended that strict evidentiary rules apply at transfer hearings, as the term "due process" does not define a particular evidentiary standard; different evidentiary standards satisfy due process depending on the nature of the proceeding involved. See, e.g., *Gerstein* v. *Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1974); *Kent* v. *United States*, supra (informal hearing satisfies due process).

Absent any evidence of a legislative intent mandating a particular evidentiary standard applicable at transfer hearings in the language of § 46b-127 or in its legislative history, we turn to other statutes relating to the same subject matter for guidance to its interpretation. See *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980); *Doe* v.

[13] The discussion to which the respondent refers involved an amendment to General Statutes § 46b-126 which was then the statute providing for mandatory transfer of serious juvenile offenders to the Superior Court. See Public Acts 1983, No. 83-402, § 1. As it was originally proposed, the bill sought to substitute the word "proceeding" for the word "hearing" in § 46b-126. This bill was amended on the floor of the General Assembly after the following statement by Representative Richard D. Tulisano: "Mr. Speaker, the amendment reinstates the word hearing rather than proceeding in the file copy. After due consideration, going to the word hearing has had lots of interpretations in court decisions and it really means the due process hearing rather than a proceeding. And, rather than leave that vague, on due consideration, we think it would be proper to do that. We have also made some technical changes. We removed, however, the standard that was in there that said probable cause sufficient to support the issuance of a search warrant. And allowing a full hearing. It would require that the parties be before the court and not *rely just* on written testimony." (Emphasis added.) 26 H.R. Proc., Pt. 17, 1983 Sess., p. 6036. (In this case there was substantial live testimony.)

*Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A. 2d 491 (1978); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) §§ 51.02, 51.03. Like § 46b-127, General Statutes § 54-46a[14] requires the court to conduct a hearing to determine if there is probable cause to believe that an accused has committed a charged offense. Unlike § 46b-127, however, the language of that statute requires the court to apply the rules of evidence. Subsection (b) of § 54-46a specifically states that

[14] "[General Statutes] Sec. 54-46a. PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state on or after May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

a probable cause hearing conducted pursuant to the statute "shall be confined to the rules of evidence with the exception of written reports and the chain of custody rule." Likewise, in probable cause hearings dictated by the former General Statutes (Rev. to 1977) § 54-76a, the court was required by the language of the statute to apply "the rules of evidence . . . as if such hearing were a jury trial."[15] Noting the omission of similar language in § 46b-127, we apply the tenet of statutory construction that " ' "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similiar statute concerning a related subject . . . is significant to show that a different intention existed." ' " *Western States Newspapers, Inc.* v. *Gehringer,* 203 Cal. App. 2d 793, 799, 22 Cal. Rptr. 144 (1962); 2A J. Sutherland, supra, § 51.02; see also *Patry* v. *Board of Trustees,* 190 Conn. 460, 468, 461 A.2d 443 (1983). That tenet of statutory construction is well grounded because " '[t]he General Assembly is always presumed to know all the existing

---

[15] "[General Statutes (Rev. 1977)] Sec. 54-76a. PROCEDURE AT HEARING IN PROBABLE CAUSE. In a hearing in probable cause the rules of evidence shall apply as if such hearing were a jury trial. The defendant shall be called upon to plead in such hearing and if he waives examination, the judge shall forthwith hold him to answer in the appropriate court. If the defendant does not waive examination, the judge shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the judge that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the judge shall forthwith hold him to answer in the appropriate court; otherwise the judge shall discharge him. After concluding the proceeding the clerk of the court shall transmit to the clerk of the appropriate court all papers in the proceeding, any bail taken by him, and a transcript of the proceedings, in accordance with the provisions of subsection (a) of section 54-10."

With the unification of the court system, probable cause hearings to bind an accused over to a higher court are no longer necessary. As a result, § 54-76a has been repealed. Nevertheless, the statute's language is helpful in the present case to demonstrate that if the legislature wishes the rules of evidence to apply, it knows how to secure their application.

statutes and the effect that its action or non-action will have upon any one of them.' " *Gentry* v. *Norwalk,* 196 Conn. 596, 609, 494 A.2d 1206 (1985); *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 540, 494 A.2d 555 (1985). We conclude, therefore, that the absence of any language in § 46b-127 confining the court to the rules of evidence in a hearing to determine probable cause at the transfer stage of proceedings is a compelling indication that strict evidentiary standards were not intended to apply in such a proceeding. In a transfer hearing, the court can hear any evidence that it determines to be reliable, and that is material and relevant to the issue of probable cause.[16]

An overview of the statutory scheme concerning the transfer of juveniles to the regular criminal docket supports such an interpretation of the statute. Section 46b-127 (1) requires that a juvenile who is at least fourteen years of age be transferred to the regular criminal docket if, after a hearing, the court finds that there is probable cause to believe that the juvenile has committed murder. Once transferred, article first, § 8 of the Connecticut constitution and § 54-46a mandate that the juvenile be afforded yet another probable cause hearing, subject to the rules of evidence, prior to a trial on the merits of the charged offense where, obviously, the rules of evidence will also apply. If, therefore, we were to interpret § 46b-127 to require the court to apply the formal rules of evidence at transfer hearings, a juvenile would be allowed two identical probable cause determinations, one in the transfer court, and one in the adult Superior Court, prior to a trial at the adjudicatory stage to determine guilt or innocence. Such duplication is unwarranted. See *Wolf* v. *State,* 99 Idaho 476, 583 P. 2d 1011 (1978); *Matter of Three Minors,* 100 Nev. 414, 684 P.2d 1121 (1984) (in similar statutory scheme,

---

[16] Any indication to the contrary in *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 305–306 n.2, 488 A.2d 778 (1985), is dictum.

court denied use of strict evidentiary standards stating that a child is not entitled to two preliminary hearings); see also *People* v. *Hamilton,* 80 Ill. App. 3d 794, 800, 400 N.E.2d 599 (1980) (allowing the use of reliable hearsay at a transfer hearing because it is a "much less time-consuming method of proof very nearly essential to this type of hearing"); cf. Official Comments to Federal Rule of Criminal Procedure 5.1; 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 14.3 (the efficient administration of justice precludes application of strict evidentiary standards at preliminary hearings).

The essentials of due process and fair treatment mandated by the United States Supreme Court in *Kent* v. *United States,* supra, are not impeded by eschewing the formal rules of evidence in a transfer proceeding. In considering whether due process is served it is important to keep in mind the nature of a juvenile transfer hearing. While it cannot be denied that the transfer hearing is a " 'critically important' proceeding"; id.; "[s]uch a hearing does not result in a determination of delinquency . . . does not result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. . . . If the proceedings under consideration were an adjudicatory hearing which could result in a determination that the defendant was guilty of a crime or was a delinquent, we would face a different issue. We are here concerned with a transfer hearing, which has as its only purpose the determination of . . . use of one of two possible forums—the juvenile court or the superior court—which will then hold the adjudicatory hearing." *State* v. *Piche,* 74 Wash. 2d 9, 14, 442 P.2d 632 (1968), cert. denied, 393 U.S. 1041, 89 S. Ct. 666, 21 L. Ed. 2d 588 (1969); *People* v. *Chi Ko Wong,* 18 Cal. 3d 198, 557 P.2d 976, 135 Cal. Rptr. 392 (1976); *Cle-*

*mons* v. *State,* 162 Ind. App. 50, 317 N.E.2d 859, cert. denied, 423 U.S. 859, 96 S. Ct. 113, 46 L. Ed. 2d 86 (1975). Based on this premise, "[t]he trend of authority is that . . . hearsay rules do not apply" in determinations of probable cause at transfer hearings. *Ex parte Whisenant,* 466 So. 2d 1006, 1012 (Ala. 1985) (Torbert, C. J., dissenting); *Matter of Pima County, Juv. Act. No. J-47735-1,* 26 Ariz. App. 46, 48, 546 P.2d 23 (1976); *People* v. *Chi Ko Wong,* supra, 405; *In re Dinson,* 58 Haw. 522, 527, 574 P.2d 119 (1978); *State* v. *Christensen,* 100 Idaho 631, 634, 603 P.2d 586 (1979); *People* v. *Taylor,* 76 Ill. 2d 289, 305, 391 N.E.2d 366 (1979); *Jonaitis* v. *State,* 437 N.E.2d 140, 144 (Ind. App. 1982); *State* v. *Muhammad,* 237 Kan. 850, 854, 703 P.2d 835 (1985); *In re Murphy,* 15 Md. App. 434, 437, 291 A.2d 867 (1972); *Commonwealth* v. *Watson,* 388 Mass. 536, 540, 447 N.E.2d 1182 (1983); *Marvin* v. *State,* 95 Nev. 836, 842, 603 P.2d 1056 (1979); *State* v. *Gibbs,* 126 N.H. 347, 352–53, 492 A.2d 1367 (1985); *In re P.W.N.,* 301 N.W.2d 636 (N.D. 1981); *State* v. *Carmichael,* 35 Ohio St. 2d 1, 8, 298 N.E.2d 568 (1973), cert. denied, 414 U.S. 1161, 94 S. Ct. 992, 39 L. Ed. 2d 113 (1974); *Matter of M.A.B.,* 641 S.W.2d 621, 623 (Tex. App. 1982); *Matter of S.E.C.,* 605 S.W.2d 955 (Tex. App. 1980); *In re Harbert,* 85 Wash. 2d 719, 727, 538 P.2d 1212 (1975); *State* v. *Piche,* supra; *In re E.H.,* 276 S.E.2d 557, 565 (W. Va. 1981); *In Interest of P.A.K.,* 119 Wis. 2d 871, 887, 350 N.W.2d 677 (1984). Accordingly, we determine that due to the nonadjudicatory nature of the transfer hearing, consideration by the court of reliable hearsay evidence does not deprive the juvenile " 'of fundamental fairness or of any right of confrontation or cross-examination.' *Williams* v. *Oklahoma,* 358 U.S. 576, 584 [79 S. Ct. 412, 3 L. Ed. 2d 516] (1959)." *In re Dinson,* supra; *Clemons* v. *State,* supra; *In re Harbert,* supra.[17]

---

[17] The respondent maintains that his rights of confrontation and cross-examination are independently protected under General Statutes

Further, it is necessary to point out that the child's status as a juvenile is not irrevocably terminated by transfer to the regular criminal docket. If the adult court determines in the second probable cause hearing that there is insufficient evidence for a finding of probable cause that the child committed murder, our holding in *State* v. *Torres,* supra, dictates that the child be returned to the juvenile court. Once transferred, therefore, the child will not be "trapped" in the adult criminal justice system as the child cannot be tried as an adult for offenses that would not have resulted in the child's transfer under § 46b-127 (1).

In the present case, therefore, even if Garcia's statement is hearsay that may not be admissible at a trial, it was properly admitted by the court at the respondent's transfer hearing as long as the court properly determined that it was relevant and reliable. Based on the record,[18] we conclude that Garcia's statement was

§ 46b-135 (a). That section, however, applies to a "delinquent child." At the transfer stage of proceedings there has been no adjudication of delinquency nor will the transfer hearing result in one. The only purpose of the transfer proceeding is to determine the proper forum for adjudication. Nowhere in the legislative history is there any indication that § 46b-135 (a) was to apply to a hearing in which there had not been and will not be an adjudication of delinquency. In 1969, the legislature specifically amended General Statutes § 17-66b, the precursor of § 46b-135 (a), to add the language "delinquent child." See Public Acts 1969, No. 794; compare Public Acts 1967, No. 630. In discussing the 1969 amendment, Representative James T. Healey specifically referred to application of the constitutional rights in question to "delinquency proceedings." 13 H.R. Proc., Pt. 11, 1969 Sess., p. 4983; see Public Acts 1969, No. 794. Further, Senator T. Clark Hull referred specifically and solely to protection of "the delinquent child." 12 S. Proc., Pt. 7, 1969 Sess., p. 3231.

[18] We need not remand the case for a factual finding on the question of relevance and reliability as the court addressed the question at the transfer hearing when it considered the admissibility of Garcia's statement as hearsay. We stress, however, that we adopt the court's factual findings only. Whether the statement is admissible hearsay is a question we need not address at this time.

relevant because it discussed the respondent's involvement with Eddie Ramirez, the alleged principal in the Cauley murder, and the degree of the respondent's participation. Moreover, the statement could reasonably have been found to be reliable because it was against Garcia's penal interest, was obtained from and signed by Garcia shortly after the shooting, and was corroborated by the testimony of another passenger in the car.

The respondent next claims that two inculpatory statements made by him to the Hartford police on September 17, 1987, and September 23, 1987, respectively, were improperly obtained by the Hartford police and, therefore, should not have been considered by the court in its determination of probable cause. At his transfer hearing, the respondent filed a motion to suppress his statements, claiming that both were made without a knowing, intelligent and voluntary waiver of his *Miranda* rights.[19] The respondent also maintained that while his September 17, 1987 statement discusses his activities on the day of the Cauley murder, it was nevertheless irrelevant because it was obtained by the Hartford police in regard to a separate incident. The state opposed the respondent's motion to suppress, arguing that the transfer hearing was nonadjudicatory and, therefore, the motion was premature. The court noted the state's objection for the record but proceeded to take testimony on the issue of the respondent's ability to effect a valid waiver. Subsequently, the court ruled that a motion to suppress must be heard at a transfer hearing and that the state had the burden at that point of proving that the respondent's statements were obtained after a valid waiver of rights by both the respondent and his father. The court, thereafter, denied the respondent's motion to suppress his September 23, 1987 statement and admitted it into evi-

---

[19] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

dence, stating that the prosecution had met its burden of showing that both the respondent and his father had voluntarily made an intelligent and knowing waiver of the respondent's *Miranda* rights. The court also refused to suppress the respondent's September 17, 1987 statement, because even though the statement involved another incident it was relevant and the state had met its burden of demonstrating that there had been a valid waiver of the respondent's *Miranda* rights. The respondent took an exception to both of the court's rulings.

On appeal, the respondent claims that the court was correct in permitting his motion to suppress at the transfer hearing. He argues, however, that it erred in admitting his September 23, 1987 statement because it was obtained: (1) in violation of the fifth amendment to the United States constitution; (2) in violation of the fourth amendment to the United States constitution and article first, § 8 of the Connecticut constitution; and (3) "without a meaningful compliance with [the] parental presence requirement of § 46b-137 (a)." The respondent also claims that the court improperly admitted his September 17, 1987 statement because it was "irrelevant and prejudicial" and, like the September 23, 1987 statement, was obtained without a voluntary, knowing and intelligent waiver of his *Miranda* rights. We need not reach the merits of the constitutional questions concerning the admissibility of the respondent's statements at this time because such questions are not appropriate for resolution at a transfer hearing.

Section 46b-127 does not state whether the court should entertain motions to suppress at transfer hearings. Nor does its legislative history shed any light on this issue. Accordingly, we turn for guidance once again to the procedures employed at other probable cause hearings. *Connecticut Light & Power Co.* v. *Costle,* supra; *Doe* v. *Institute of Living, Inc.,* supra; 2A J.

Sutherland, supra, §§ 51.02, 51.03. While § 54-46a (b) requires the courts to apply the rules of evidence at probable cause hearings required under subsection (a) of that statute, it specifically forbids the filing of motions to suppress, stating that "[n]o motion to suppress or for discovery shall be allowed in connection with such [probable cause] hearing." The fact that the legislature rejected the filing of motions to suppress at hearings in which it specifically required the application of the rules of evidence seems to be a clear indication that such motions should not be allowed in a transfer hearing at which strict evidentiary standards do not apply. We also note that the United States Supreme Court in *Kent* v. *United States,* supra, neither expressly nor impliedly extended fourth or fifth amendment rights to transfer hearings. *Clemons* v. *State,* supra; *Marvin* v. *State,* supra, 1059; *In re Harbert,* supra. In fact, the general rule is that constitutional questions are not properly raised in a probable cause hearing because such hearings are not adjudicatory in nature. See, e.g., Fed. R. Crim. Proc. 5.1, Notes of Advisory Committee on Rules; 2 W. LaFave & J. Israel, supra, § 14.4. Therefore, because a transfer hearing under § 46b-127 (1) is nonadjudicatory, the court need not address constitutional questions concerning the admissibility of evidence. Accord *Ex parte Whisenant,* supra; *In re Dinson,* supra; *State* v. *Christensen,* supra; *Wolf* v. *State,* supra; *Clemons* v. *State,* supra; *Matter of Three Minors,* supra; *Marvin* v. *State,* supra; *In re Harbert,* supra; *State* v. *Piche,* supra; *In Interest of J.G.,* 119 Wis. 2d 748, 350 N.W.2d 668 (1984); *Matter of M.A.B.,* supra; *Matter of S.E.C.,* supra; cf. *United States* v. *Calandra,* 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) ("[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons . . . the rationale

for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim . . . '').

Accordingly, the constitutional questions concerning the admissibility of his statements raised by the respondent, while relevant at a later adjudicatory proceeding, are not appropriate for resolution at a transfer hearing. Without addressing the merits of the responsent's claims, we conclude, therefore, that the transfer court did not err by admitting his statements into evidence over his objections on constitutional grounds.

Similarly, the respondent is not entitled at a transfer hearing to the suppression of statements allegedly obtained in violation of § 46b-137 (a).[20] That statute requires, generally, the exclusion of a juvenile's statement if not given in the presence of a parent or guardian after an advisement of rights to both. The statute, however, specifically states only that a statement obtained in violation thereof "shall be inadmissible in *any proceeding for delinquency against the child.*" (Emphasis added.) General Statutes § 46b-137 (a). A transfer hearing is not a proceeding at which an adjudication of delinquency is made. Section 46b-137 (a), therefore, by its terms is not applicable to transfer hearings. It is not for the court "to search out some intent" that it believes the legislature had; the court is "confined to the intention which is expressed in the words

[20] General Statutes § 46b-137 (a) provides: "(Formerly Sec. 51-318). ADMISSIBILITY OF CONFESSION OR OTHER STATEMENT IN JUVENILE PROCEEDINGS. (a) Any admission, confession or statement, written or oral, by a child shall be inadmissible in any proceeding for delinquency against the child making such admission, confession or statement unless made by such child in the presence of his parent or parents or guardian and after the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel, or if unable to afford cousel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him."

used." *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 550, 494 A.2d 564 (1985); *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128 (1948).

Such an interpretation of § 46b-137 (a) is, moreover, supported by its legislative history. In discussing General Statutes § 17-66d, the precursor of § 46b-137 (a), on the floor of the General Assembly, Representative Paul D. Shapero stated that the relevant sections of the bill were an attempt to "provide for . . . the criteria set forth in the 'Gault' decision." 12 H.R. Proc., Pt. 11, 1967 Sess., p. 5057; see Public Acts 1967, No. 630. In *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), the United States Supreme Court specifically dealt with the application of certain constitutional rights at delinquency proceedings where an adjudication of delinquency or guilt might result. Also, when further amendments were made to § 17-66d in 1969, Representative James T. Healey stated that the amendment "spells out that a confession is [i]nadmissible in delinquency proceedings . . . " 13 H.R. Proc., Pt. 11, 1969 Sess., p. 4984. No mention of its application to transfer hearings was made in the legislature at any time. We conclude, therefore, that although the record indicates that the police complied with § 46b-137 (a), the statute is inapplicable to transfer proceedings where the only question resolved is that of the appropriate forum to hold a trial on the merits.[21]

B

The respondent next claims that the court erred in transferring him to the regular criminal docket because the evidence did not support the court's finding that there was probable cause to believe that he was an accessory to murder.

---

[21] The question of whether statements obtained in violation of General Statutes § 46b-137 (a) would be admissible at an adjudicatory proceeding in the adult court will be left to another day.

" ' "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book [§ 4060]. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the [court's] decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the . . . decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." Id., 222.' *Rodriguez* v. *New Haven,* 183 Conn. 473, 476–77, 439 A.2d 421 (1981)." *Duksa* v. *Middletown,* 192 Conn. 191, 205–206, 472 A.2d 1 (1984); *McGaffin* v. *Roberts,* 193 Conn. 393, 408–10, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985).

In the present case, because the respondent was charged as an accessory to murder under §§ 53a-8 and 53a-54a, the court was required to determine whether there was probable cause to believe that the respondent "intended both to aid the principal *and* to commit the underlying [crime of murder]." (Emphasis in original.) *State* v. *Fleming,* 198 Conn. 255, 271, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Haddad,* 189 Conn. 383, 399, 456 A.2d 316 (1983). A finding of probable cause does not require proof beyond a reasonable doubt that the respondent was an accessory to murder, but

rather, only a "determin[ation] [of] whether the government's evidence would warrant a person of reasonable caution to believe" that the respondent acted with the intent to kill another person. *Brinegar* v. *United States,* 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *State* v. *Mitchell,* 200 Conn. 323, 336, 512 A.2d 140 (1986).[22]

At the conclusion of the transfer hearing the court found that there was probable cause to believe that the respondent "had the criminal intent required for the crime of murder; namely, the intent to kill. . . . that [he] intentionally aided [the principal] in the commission of the crime of murder. . . . [and] [t]hat [he], acting with those intentions, helped, assisted, or aided in the commission of the crime of murder." The court's finding was based on evidence that the respondent: "encouraged [the principal] to commit the act; handed [the principal] the weapon which he used to commit the act and accepted it back [after the shooting]; told others to remain silent about the killing; secur[ed] transportation to the site of the crime"; and was part of a gang that was feuding with a gang that normally gathered near the scene of the crime. Based on the record as

---

[22] In his brief, the respondent argues that varying degrees of probable cause apply to different stages of a criminal prosecution. There is, however, one probable cause standard. What differs is the procedural requirements necessary to determine whether probable cause exists at the various stages of a criminal prosecution. For example, probable cause can be found based on information provided by police officers in affidavits when the state is seeking to obtain a search warrant; *State* v. *Delmonaco,* 194 Conn. 331, 337, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984); or an arrest warrant. *State* v. *Heinz,* 193 Conn 612, 617, 480 A.2d 452 (1984). Similarly, a determination of whether there is probable cause to detain a person accused of committing a crime may be based on information provided in affidavits. *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). When the court is concerned with whether there is sufficient evidence to subject an accused to trial, however, a determination of probable cause may be required to be based on evidence received by the court at a hearing. Conn. Const., art. I, § 8; General Statutes § 54-46a.

a whole, we cannot say that the court's finding of probable cause was clearly erroneous. We therefore find no error in that regard.

C

The respondent also contends that the court erred in failing to find that § 46b-127, itself, and §§ 46b-126 and 46b-127 read in tandem, violate federal and state guaranties of due process because they are vague and ambiguous as to juvenile class A felony offenders, and violate equal protection guaranties because they make arbitrary distinctions between juveniles charged with class A felonies. We disagree. A review of the scheme of which the respondent complains reveals it to be comprehensive, with defined distinctions based on ascertainable factual standards. The fact that there may be some theoretical overlap of treatment modes for juvenile class A felony offenders does not render the statute unconstitutional. "A party contesting a statute's constitutionality has a heavy burden to prove unconstitutionality beyond a reasonable doubt." *State* v. *Dupree,* 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985); *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *Adams* v. *Rubinow,* 157 Conn. 150, 152, 251 A.2d 49 (1968). The respondent has failed to meet that burden.

Finally, we note that we have considered the respondent's claim that § 46b-127 "impermissibly infringes upon the inherent and exclusively judicial authority of the superior court." See Conn. Const., arts. II and V; *State* v. *Clemente,* 166 Conn. 501, 510–11, 353 A.2d 723 (1974). We find that claim to be without merit.

There is no error.

In this opinion PETERS, C. J., HEALEY, COVELLO and HULL, Js., concurred.

SHEA, J., with whom GLASS, J., joins, concurring. Although I agree with the rest of the opinion and with the outcome, I disagree with part II A, which holds that the hearing on probable cause contemplated by General Statutes § 46b-127 before a child accused of murder may be transferred to the regular criminal docket of the Superior Court is one in which the child's right to confront and cross-examine the witnesses against him, as well as the constitutional and statutory prohibitions against the use of his allegedly unlawfully obtained confession, do not apply. The United States Supreme Court, except for extending the right of counsel to juveniles, has left unresolved the ingredients necessary for a transfer hearing to "measure up to the essentials of due process and fair treatment." *Kent* v. *United States,* 383 U.S. 541, 562, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966); see *Breed* v. *Jones,* 421 U.S. 519, 537, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975). Its recognition of the critical importance to the juvenile of the transfer proceeding, however, casts doubt upon the assumption of the majority that the use of evidence at a transfer hearing that would violate the constitutional rights of a defendant if admitted at a trial carries no constitutional ramifications. In any event, I am convinced that the use of such evidence at a transfer hearing cannot be squared with the intention of the General Assembly as expressed in statutes conferring the right of confrontation upon a child and affording protection against obtaining his confession unlawfully, as well as in the legislative history referring to a transfer hearing as a "due process hearing."

General Statutes § 46b-135 (a)[1] provides that "[a]t the commencement of any proceeding on behalf of a delin-

---

[1] "[General Statutes] Sec. 46b-135. (Formerly Sec. 51-316). RIGHT TO COUNSEL AND CROSS-EXAMINATION. (a) At the commencement of any proceeding on behalf of a delinquent child, the parent or parents, guardian and the child shall have the right to counsel and be so informed by the judge,

quent child . . . the child shall have the right to counsel and . . . such counsel and such . . . child shall have the rights of confrontation and cross-examination." Since Antonio Garcia, an alleged coparticipant in the crime, refused to testify at the transfer hearing, the admission of his written statement, which implicates the respondent, was a plain violation of the respondent's right of confrontation as recognized in *Bruton* v. *United States,* 391 U.S. 123, 128, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), and *Douglas* v. *Alabama,* 380 U.S. 415, 419, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). As that statute extends to a delinquent child in "any proceeding" the "rights of confrontation and cross-examination," it must be deemed to apply to a transfer hearing under § 46b-127. The majority opinion apparently regards such a transfer hearing as not constituting "any proceeding on behalf of a delinquent child," because it "is not a proceeding at which an adjudication of delinquency is made." The respondent, however, was the subject of a delinquency petition filed soon after his arrest under General Statutes § 46b-128, which was the basis for the assertion of jurisdiction over him by the juvenile court. Section 46b-135 (a), in addition to providing "rights of confrontation and cross-examination" to the child, affords him the right of counsel and directs that, "[a]t the commencement of any proceeding on behalf of a delinquent child," the child and his parents must be informed of these rights by the judge. It is evident that § 46b-135 (a) treats both the right of confrontation and of counsel as essential for the protection of any child accused of a crime in any proceeding in the juvenile court. I am not aware that juvenile court judges, in advising a child and his parents of their rights under § 46b-135 (a), have

---

and that if they are unable to afford counsel that counsel will be provided for them, and such counsel and such parent or parents, guardian, or child shall have the rights of confrontation and cross-examination."

excepted a transfer hearing from the application of this statute or have drawn a distinction between the right to counsel and to confrontation at such a proceeding, as the majority has done.

I disagree also with the position taken in the opinion that the scope of a transfer hearing is so limited under § 46b-127 that a child's confession may be used in finding probable cause even if it has been obtained in violation of his constitutional rights and without satisfying the requirements of General Statutes § 46b-137 (a) that the child's parents be present. The majority opinion construes the prohibition against the admission "in any proceeding for delinquency against the child" of any confession not complying with § 46b-137 (a) not to apply to a transfer hearing because "[a] transfer hearing is not a proceeding at which an adjudication of delinquency is made." This narrow interpretation of the applicability of § 46b-137 (a) would deprive a child of the right given him to exclude an unlawfully obtained confession in a proceeding far more important for his welfare than that for adjudicating him a delinquent. The statutory text does not require the absurd result of making its protection against unlawfully obtained confessions inapplicable to the very proceeding having the direst consequences for the child.

The holding of the majority that evidence may be admitted at a transfer hearing of a child that would violate the constitutional rights of a defendant if used at an adult criminal proceeding is also impossible to reconcile with the remarks of Representative Richard D. Tulisano quoted by the majority concerning the substitution of the word "hearing" for "proceeding" in General Statutes § 46b-126, which parallels General Statutes § 46b-127: "[T]he word hearing has had lots of interpretations in court decisions and it really means the due process hearing rather than a proceeding. . . . It would require that the parties be before the court and

not rely just on written testimony." 26 H.R. Proc., Pt. 17, 1983 Sess., p. 6036. The reference to a "due process hearing" must have been intended to preclude the use of evidence at a transfer hearing that unquestionably would violate a child's right to due process of law under the fourteenth amendment of the federal constitution if it were admitted at a trial. The expressed intention to require the parties to be "before the court" rather than "just rely on written testimony" is entirely frustrated by the use of documents not admissible at a trial, because such use would violate a child's right to due process of law. I read this legislative history to indicate the intention to afford children in transfer hearings under § 46b-126 or § 46b-127 at least the rights of confrontation and cross-examination and also protection against the use of illegally obtained confessions. Such a view would be consistent with § 46b-135 (a), which independently provides the right of confrontation to a child in "any proceedings on behalf of a delinquent child, and also with § 46b-137 (a), which makes his confession inadmissible when obtained without compliance with its provisions. The position of the majority that the legislature never intended either statutory or constitutional prohibitions against the use of a child's confession or the statement of his accomplice to be applicable in a "due process hearing" for transfer of a child to the adult criminal docket is contrary to any fair reading of this history.

I concur in the result, nevertheless, because even without the respondent's confession or Garcia's statement, there was ample evidence to support the finding of probable cause in the testimony of witnesses presented at the hearing. A witness riding in the car when the crime occurred testified that the respondent said he wanted to shoot some member of the Albany Avenue gang, that he handled the gun and gave it to Ramirez when he requested it just before the shoot-

ing, and that the respondent told the girls in the car to say nothing about the shooting. That testimony is sufficient to support a finding of probable cause for the charge of murder against the respondent as an accomplice.